**Taurus BUTLER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 02S00–9812–CR–822.**

Supreme Court of Indiana.

Feb. 25, 2000.

---

**5.** Dr. Dixon also conducted an I.Q. test, the Westler Adult Intelligence Scale test, in which Defendant scored below average.

David B. LeBeau, Deputy Public Defender, Fort Wayne, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Attorneys for Appellee.

ON DIRECT APPEAL

BOEHM, Justice.

Taurus Butler was convicted in a retrial on two counts of murder and of being a habitual offender. He was sentenced to

160 years imprisonment. In this direct appeal he contends that (1) his second trial violated the Double Jeopardy Clause of the Fifth Amendment because his first trial ended in a mistrial attributable to the State's misconduct; (2) the trial court erroneously instructed the jury during the habitual offender phase; and (3) the State impermissibly commented on his failure to testify by placing a letter written by him in an empty chair and then reading it to the jury during closing argument. We affirm the trial court.

### Factual and Procedural Background

On the evening of May 2, 1997, Brenda Stephens was in her home in Fort Wayne with her sons, Andre, age sixteen, and Linus, twelve, and her two nephews, Derriel Jones, thirteen, and Emmanuel Jones, five. Gunfire erupted and Emmanuel was struck with a high-powered round that destroyed the left side of his head. He died at the scene. Andre was also shot and was taken to the hospital where he died several hours later of a wound to the abdomen.

Shortly after the shooting, Robert Hatch and Bernard Weaver gave statements to police implicating Butler as the shooter. Weaver and Butler were arrested and both were charged with two counts of murder. Butler was also charged with being a habitual offender. Butler went to trial seven months later, but moved for a mistrial after Weaver, who was in jail awaiting trial, entered into a plea agreement requiring him to testify against Butler. The trial court granted the mistrial.

At Butler's retrial several months later, Weaver testified that Butler fired the shots in Stephens' house under the mistaken belief that it was the home of Jermaine Norris, who Weaver believed was out to kill Butler. According to Weaver, shortly before the murders Butler said that "everybody in that house got to go."

A jury convicted Butler of two counts of murder and of being a habitual offender. He was sentenced to the maximum term of 160 years imprisonment.

### I. Double Jeopardy

■ Butler contends his retrial violated the Double Jeopardy Clause of the Fifth Amendment.[1] Butler's first trial commenced on Monday, December 1, 1997. On Thursday morning, December 4, the State moved for a one-day continuance of the trial. The prosecutor informed the Court that the State had revived plea discussions with Weaver on Wednesday night. Weaver's counsel had told the State that his client was willing to accept a plea agreement and testify against Butler. At the time of the Thursday hearing, Weaver was being interviewed by a detective. The trial court continued the matter until 2:00 p.m. that afternoon.

Shortly before 2:00 p.m., Weaver pleaded guilty to conspiracy to commit murder pursuant to a plea agreement providing for a maximum of twenty years imprisonment. Butler's counsel was present at Weaver's plea hearing. The trial court then resumed consideration of Butler's case. Defense counsel made several motions, including a request for a ninety-day continuance and a motion for a mistrial based on the State's having obtained Weaver's guilty plea in mid-trial. The trial court granted a continuance until Monday, December 8.

On Friday, December 5, the State informed the trial court that it had obtained further evidence in its case against Butler. First, after Weaver consented to a search of his jail cell, police found several letters, including at least one believed to have

---

1. Butler also cites Article I, § 14 of the Indiana Constitution and Indiana Code § 35–41–4–3. However, he provides no authority or independent analysis supporting a separate standard under the Indiana Constitution. Accordingly, the state constitutional claim is waived. *See Brown v. State*, 703 N.E.2d 1010, 1015 n. 4 (Ind.1998). Moreover, although he quotes part of Indiana Code § 35–41–4–3, he suggests only that the statute codifies the state and federal constitutional prohibitions against double jeopardy. Accordingly, we address Butler's claim solely under the Fifth Amendment.

been written by Butler, containing incriminating statements. Second, Ronald Stephens, Andre's father who was living in Georgia at the time of the shooting, had notified police on the morning of December 5 that he had been given two shell casings by one of his sons.[2] Based on this new evidence and Weaver's guilty plea and willingness to testify against Butler, defense counsel again requested a continuance of at least ninety days and a mistrial. The trial court agreed that these developments warranted additional time to prepare Butler's defense. It granted Butler's motion for a mistrial.[3] A December 5 order entered by Judge Surbeck, who had presided over the proceedings, stated: "Court further finds that circumstances necessitating said continuance/mistrial were not created by Prosecuting Attorney. Court finds that Prosecuting Attorney has not intentionally caused termination of trial." The case was reset for trial on July 13, 1998. Judge Surbeck noted that Judge Gull would preside over cases in that court beginning January 1, 1998.

On July 6, 1998, Butler filed a motion to dismiss the information, alleging that a second trial would violate the prohibition against double jeopardy. Judge Gull held a hearing on the motion on July 9. During closing argument on the motion, the deputy prosecutor assigned to the case stated:

[T]he investigation in every criminal cause continues right up to the brink of trial, through the course of trial, often times, through the middle of trial. Bernard Weaver was listed as a witness on the face of the charging information ... filed in this cause. He was not a new witness. The potential for his testimony in this case was known from the very, very beginning. Not only as an alleged co-defendant, but also as a listed witness. For the Defense to assert this claim ... assumes that the State could correctly predict how the Court would rule, whether the guilty plea of Bernard Weaver would occur, whether there would be a satisfactory factual basis, and at the conclusion of that hearing, what the Court would do and how the Defense would respond.

The State added that it stood prepared to continue with the trial after a brief continuance.

On July 13, Judge Gull orally denied Butler's motion to dismiss. After listening to tapes of the arguments and motions of counsel from the December 4 hearing, she found that "there was no bad faith conduct or harassment on the part of the State that was intended to goad the defendant into moving for a mistrial...."

 The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend 5. Although a defendant's motion for mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact," *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the United States Supreme Court has provided a narrow exception that bars a second trial after a mistrial "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial...." *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The subjective intent of the prosecutor is the dispositive issue. *See Wilson v. State,* 697 N.E.2d 466, 472 (Ind.1998). Although a trial court's determination of prosecutorial

---

**2.** The casings had been found on the roof of Stephens' home approximately two days after the shooting.

**3.** The trial court observed that "it is not possible to simply continue the case at this point and maintain this jury to some future date." The trial court noted that such a lengthy con-

tinuance would impose a significant hardship on the jurors, that the passing of time would adversely affect their ability to remember and thus render a fair verdict, and that the jurors would be "extraordinarily susceptible to publicity about the case" during this additional time.

intent is not conclusive for purposes of state appellate review, we do regard its determination as "very persuasive." *Id.* at 473.[4] It is a factual determination that we review under a clearly erroneous standard.

Here, two different trial judges found that the State's actions were not intended to goad Butler into moving for a mistrial. The State asserts on appeal that it sought Weaver's testimony mid-trial to convict Butler, not to delay his trial or goad him into moving for a mistrial. The trial court's findings on this point appear to be correct, and certainly are not clearly erroneous.[5] Accordingly, we hold that Butler's second trial was not barred by the Double Jeopardy Clause.

## II. Habitual Offender Instructions

Butler next contends that the trial court's instructions to the jury during the habitual offender phase violated Article I, § 19 of the Indiana Constitution for the reasons explained in this Court's recent opinions in *Parker v. State*, 698 N.E.2d 737 (Ind.1998), and *Seay v. State*, 698 N.E.2d 732 (Ind.1998). Butler did not object to the habitual offender instructions at trial and any claim of error is waived. *See, e.g., Bunch v. State*, 697 N.E.2d 1255, 1257 (Ind.1998) (citing Ind.Crim. Rule 8(B)).[6]

## III. Failure to Testify

As a final point, Butler contends that the State impermissibly commented on his failure to testify during closing argument. The prosecutor made the following comments: "There's another witness in this case and you had an opportunity to hear from that witness. State's Exhibit 37 with Taurus Butler's fingerprints all over it and I don't mean that figuratively, I mean it literally.... And what does that letter say?" The prosecutor then moved an empty chair in front of the jury and propped the letter up in the chair. He proceeded to read the letter, in which Butler asked Ronnie Smith to lie to the police and provide him with an alibi on the night of the shootings. Butler concedes that he did not object to the prosecutor's comments or conduct at trial, but contends that the error is fundamental.

The Fifth Amendment prohibits compelling a defendant to testify against himself. *See* U.S. Const. amend. 5. The United States Supreme Court has interpreted this amendment to bar prosecutorial comment on a defendant's silence. *See Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). As this Court explained in *Moore v. State*, 669 N.E.2d 733, 739 (Ind.1996), a Fifth Amendment violation occurs "when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence."

Here, the prosecutor merely highlighted–albeit it somewhat dramatically–a

---

4. The United States Supreme Court has found that a trial court's determination of the issue is dispositive. *See Kennedy*, 456 U.S. at 679, 102 S.Ct. 2083 ("Since the Oregon trial court found, and the Oregon Court of Appeals accepted, that the prosecutorial conduct culminating in the termination of the first trial was not so intended by the prosecutor, that is the end of the matter for purposes of the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the *United States Constitution*."). However, as this Court observed in *Wilson*, "[t]hough we are inclined to think such trial court determinations are not conclusive for purposes of state appellate review, we do regard them as very persuasive." 697 N.E.2d at 473.

5. Butler suggests that these findings should not be given deference because (1) Judge Surbeck did not hold a hearing on the issue before making his finding, and (2) Judge Gull did not review a transcript of the first trial. The State offers a plausible explanation for its actions, and Butler points to nothing he would have offered in response. Nor did the defense request that Judge Gull review a transcript of the trial.

6. Butler does not make a claim of fundamental error. In any event, as this Court observed in *Seay*, an erroneous habitual offender instruction of this variety is not fundamental error. *See* 698 N.E.2d at 737.

letter written by Butler that had been properly admitted into evidence. As the State points out, the prosecutor did not say, "You could have heard from that witness, but he didn't testify." Rather, the prosecutor told the jury that it had "had an opportunity to hear from that witness[,] State's Exhibit 37...." By placing the letter in the chair, the prosecutor took the metaphor of the letter as a witness one step further. These comments, however, focused on the letter, which was admitted into evidence, and not on Butler's failure to testify. The prosecutor's comments and conduct here are not a basis for a claim of error, let alone fundamental error.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.