## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 14 2016, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard L. Boswell, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 14, 2016

Court of Appeals Case No.
84A04-1505-CR-472

Appeal from Vigo Superior Court.
The Honorable Michael J. Lewis, Judge.
Cause No. 84D06-1010-MR-3358

**Friedlander, Senior Judge**

[1] Richard L. Boswell, Jr. appeals his convictions and sentences for murder, a felony,[1] and attempted murder, a Class A felony.[2] We affirm.

[2] Boswell presents five issues for our review which we restate as:

1. Whether the trial court erred in denying Boswell's motion to dismiss on double jeopardy grounds.
2. Whether the trial court erred in denying Boswell's motion for change of venue.
3. Whether there was sufficient evidence to support Boswell's convictions.
4. Whether the trial court erred in denying Boswell's motions for a mistrial.
5. Whether the trial court erred in sentencing Boswell for his conviction of attempted murder.

[3] In 1979 Kathy Jo Baker was murdered and her two-year-old son Ryan was viciously attacked and left for dead. Investigation into the crimes yielded no results, and the case remained unsolved. In 2008, new information was provided to the police which led to further investigation and eventually charges of murder and attempted murder being filed against Boswell in 2010.

[4] Boswell's first jury trial in January 2013 ended in a mistrial, and the trial court re-set the cause for a second trial. Prior to the second trial, Boswell filed a

---

[1] Ind. Code § 35-42-1-1 (1977).

[2] Ind. Code §§ 35-42-1-1, 35-41-5-1 (1977).

motion for change of venue. After a hearing on the matter, the trial court denied Boswell's motion.

[5] Boswell's second jury trial commenced in April 2013 and, like the first, ended in a mistrial. Boswell filed a motion to dismiss the case on double jeopardy grounds, to which the State objected. Following a hearing, the trial court denied Boswell's motion to dismiss but certified its order for interlocutory appeal at Boswell's request. The Court of Appeals declined to accept the appeal.

[6] In October 2014, Boswell filed a second motion for change of venue. The trial court took the motion under advisement after a hearing and subsequently denied it. Boswell's third jury trial was held in April 2015, and he was found guilty as charged. The trial court sentenced Boswell to consecutive terms of fifty-five years for the murder of Kathy Jo and forty-five years for the attempted murder of Ryan. This appeal followed.

## 1. Motion to Dismiss on Double Jeopardy Grounds

[7] Boswell first contends the trial court erred by denying his motion to dismiss the charges against him following a mistrial because his retrial violated the Double Jeopardy Clause of the Fifth Amendment.[3]

---

[3] Boswell also cites article I, section 14 of the Indiana Constitution, the state constitutional double jeopardy prohibition, and Indiana Code section 35-41-4-3 (1977), the codification of the state prohibition against placing a defendant in jeopardy twice for the same offense. However, he provides no authority or

[8] The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." If a defendant moves for or consents to a mistrial, he forfeits the right to raise a double jeopardy claim in subsequent proceedings unless the motion for mistrial was necessitated by governmental conduct "'intended to goad the defendant into moving for a mistrial.'" *Willoughby v. State*, 660 N.E.2d 570, 576 (Ind. 1996) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 2089, 72 L. Ed. 2d 416 (1982)). Accordingly, the subjective intent of the prosecutor is the dispositive issue. *Noble v. State*, 734 N.E.2d 1119 (Ind. Ct. App. 2000), *trans. denied*. "Although a trial court's determination of prosecutorial intent is not conclusive for purposes of state appellate review, we do regard its determination as very persuasive." *Butler v. State*, 724 N.E.2d 600, 603-04 (Ind. 2000). As this is a factual determination, we review it under a clearly erroneous standard. *Id*. at 604. Although Boswell urges us to utilize a de novo standard of review for this issue, we are obliged to follow the precedent of our supreme court.

[9] In its order concerning the parties' pre-trial motions for Boswell's first trial, the trial court limited the testimony of State's witness Jodie Bennett. Bennett is an inmate to whom Boswell, while imprisoned on an unrelated sexual offense,

---

independent analysis supporting a separate standard under the Indiana Constitution or the statutory prohibition based thereon. Accordingly, his state constitutional and statutory claims are waived, and we address his claim solely under the Fifth Amendment. *See Butler v. State*, 724 N.E.2d 600, 602 n.1 (Ind. 2000).

confessed that he should have killed his victim like he had done previously when he killed a woman and tried to kill her son after his sexual advances were rejected by the woman. As to Boswell's statement, Bennett testified, "He told me he had killed another lady . . ." Tr. 1st Trial p. 506.[4] Defense counsel objected and moved for mistrial based upon the implication that Boswell had committed a murder in addition to the one he confessed to Bennett. Following a discussion between counsel and the judge, the trial court granted defense counsel's motion for mistrial and set the case for a second trial.

[10] With the same evidentiary limits in place, the court proceeded with Boswell's second trial in April 2013. In its closing argument, the State said, "While in prison [Boswell]'s talking to Mr. Bennett and he tells Mr. Bennett that he had killed another women [sic]." Tr. 2nd Trial p. 766. Defense counsel immediately requested a mistrial, which the trial court granted without allowing any response from the State.

[11] Boswell subsequently filed a motion to dismiss, claiming the charges should be dismissed because double jeopardy barred his retrial. The State filed its objection to Boswell's motion, and the court heard argument thereon. The court denied Boswell's motion and simply stated that its ruling was based upon

---

[4] Because we have transcripts from three different trials, for clarification purposes we will cite to the different transcripts as "Tr. 1st Trial," "Tr. 2nd Trial," and "Tr. 3rd Trial."

the arguments presented at the hearing and the parties' motions and memorandums.

[12] In regard to whether the State intentionally goaded the defense into a mistrial, defense counsel stated at the hearing on Boswell's motion to dismiss that the prosecuting attorney has vast experience and that the motion in limine in this case had been discussed in detail. Defense counsel also argued that the State had gained an advantage for a subsequent retrial by hearing the cross-examination of the State's witnesses.

[13] The State responded that had it been given an opportunity to present argument on Boswell's motion for mistrial at the second trial, it would have emphasized that the misstatement occurred during closing arguments of counsel, which is not evidence and which is more readily curable without a mistrial than a statement by a witness. The State then argued it had no reason to want a mistrial because it had encountered "no real difficulties in getting the evidence in." Tr. Mot. Dismiss Hrg. p. 12. In addition, the State reasoned that it would be inconsistent for it to intentionally cause further delay in this case because, at the time the misstatement occurred, all the evidence had been presented, the State still had an opportunity for rebuttal evidence if it needed to present anything else, and that further delay in this case could lead to the loss of witnesses and/or loss of memory given that the case is three decades old.

[14] We see nothing in the record to indicate the State intended to deliberately cause a mistrial. Boswell's challenge to the trial court's ruling amounts to mere

speculation which does not demonstrate that the trial court's determination was clearly erroneous. We find no error with the trial court's denial of Boswell's motion to dismiss.

## 2. Motion for Change of Venue

As his second claim of error Boswell asserts the trial court erred by denying his motion for change of venue. We review a trial court's denial of a motion for change of venue for an abuse of discretion. *Specht v. State*, 734 N.E.2d 239 (Ind. 2000). To prevail, a defendant must demonstrate the existence of two distinct elements: (1) prejudicial pretrial publicity, and (2) the inability of the jurors to render an impartial verdict. *Id.*

In October 2014, prior to his third trial, Boswell filed a motion for change of venue maintaining that he was unable to receive a fair trial in Vigo County due to "public hostility" and "outrage" as well as "extensive, prejudicial news reporting" of the case. Appellant's App. p. 273. Boswell attached to his motion a recent newspaper article about the case. The parties presented argument on the motion at a hearing in the trial court, after which the court took the matter under advisement. In February 2015, the court denied Boswell's motion for change of venue.

Pretrial publicity is prejudicial when it contains either inflammatory material that is not admissible at trial or when it misstates or distorts the evidence. *Green v. State*, 753 N.E.2d 52 (Ind. Ct. App. 2001), *trans. denied*. The newspaper article attached to Boswell's motion recounted the two prior mistrials of the

case, Boswell's criminal history post-1979 as it related to the existence of his DNA profile in the state's system, and the DNA evidence linking him to this crime. In this regard, the article contained inflammatory, inadmissible information. Thus, Boswell established the existence of prejudicial pretrial publicity, and the State acknowledged as much at the hearing on Boswell's motion. *See* Tr. Pre-Trial Hrgs. p. 92.

[18] Yet, the overarching question is whether the jurors were able to render an impartial verdict. Jurors need not be totally ignorant of the facts in order for a defendant to receive a fair trial. *Collins v. State*, 826 N.E.2d 671 (Ind. Ct. App. 2005), *trans. denied*. Juror exposure to pretrial publicity, alone, is insufficient to support a claim that local prejudice entitles a defendant to a change of venue; the defendant must also demonstrate that the jurors were unable to set aside any preconceived notions of guilt and render a verdict based upon the evidence. *Id.*

[19] Here, the potential jurors were asked to raise their hand if they had heard about the case or believed they knew anything about the case. The jurors who raised their hand were then taken into the judge's chambers individually for voir dire by the judge and the parties. Those jurors who were unsure of their impartiality or who had already formed an opinion on the case were excused. Nothing in our review of the transcript revealed that a juror who was unable to disregard any pretrial publicity or set aside a preconceived notion of guilt was allowed to remain on the jury panel. Further, Boswell has not directed our attention to any such evidence in the record. The trial court properly exercised its discretion in denying Boswell's motion for change of venue.

# 3. Sufficiency of the Evidence

Boswell argues that the State's evidence is insufficient. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501 (Ind. Ct. App. 2015). Further, it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Tongate v. State*, 954 N.E.2d 494 (Ind. Ct. App. 2011), *trans. denied*.

Boswell challenges the adequacy of the State's evidence, stating that "[o]nly two (2) items go toward establishing Boswell is guilty," and "[t]his evidence is far below the level at which a person can be found guilty beyond a reasonable doubt." Appellant's Br. pp. 25, 26. The two items Boswell refers to are a t-shirt found to contain his DNA and the testimony of the State's witness, inmate Bennett.

The evidence at trial showed that Kathy Jo and Kenny Baker were married and had a son, Ryan. On Tuesday, May 22, 1979, Kenny went to work, and Kathy Jo and two-year-old Ryan stayed at their home in a remote area of town. When Kenny returned home from work at the end of the day, the house was

undisturbed, but Kathy Jo and Ryan were missing. Friends and family immediately began searching for the two, and the next day they found Kathy Jo's body and a seriously injured Ryan in a marshy, secluded area not far from their home. Kathy Jo was found wearing a t-shirt and with her bathing suit bottoms stuffed in her mouth. Ryan was laying at his mother's feet with a severe head wound. He was taken to the hospital where he spent several months undergoing surgery and skin grafts and recovering from complications. The findings of an autopsy performed on Kathy Jo revealed that the primary cause of her death was strangulation by throttling.

[23] Investigation into the case stalled and no charges were filed. In April 2008, a woman called the State Police and advised that she thought she knew who had murdered Kathy Jo. This caused the police to pull from storage the evidence from the case and perform further testing. DNA testing, which was not available in 1979, was performed on stains found on the t-shirt Kathy Jo was wearing when she was discovered and which had been preserved as part of the evidence in the case.

[24] Paulita McGuire, a forensic DNA analyst at the Indiana State Police lab, testified that although the passage of time may degrade a DNA sample such that the amount of information able to be gleaned from the sample is reduced, time would not alter the DNA profile contained in the sample. McGuire then testified that in this case she performed DNA testing on certain items, one of which was the t-shirt Kathy Jo was wearing. One particular stain that McGuire tested was found on the back of the t-shirt and was a very small reddish-brown

stain. She testified that although the overall size of the stain was only one and one-half to two millimeters (roughly half the size of a pencil eraser), the stain contained a good concentration of DNA from which she was able to obtain a DNA profile. Tr. 3rd Trial pp. 776-77, 828. McGuire further testified that she was able to obtain a DNA profile for twelve of fifteen markers. Because four of the twelve yielded only partial information, she loaded only the remaining eight markers into the DNA database. *Id.* at 825-26. She explained that she would not put partial information into the database because the result would be inconclusive. *Id.* at 826. The information she submitted to the database matched a DNA profile contained in the database. McGuire explained that when a match occurs, the analyst examines both profiles to confirm the match, and then the sample is re-analyzed to further verify the results. Once the sample was re-analyzed and confirmed, she notified the agency that submitted the DNA standard for that individual and requested another sample from the individual. McGuire testified that the individual was Boswell and that the DNA profile obtained from the stain on the t-shirt was consistent with Boswell. Moreover, the frequency with which this DNA profile would occur in the Caucasian population of the earth is one in forty billion. *Id.* at 834-35.

[25] The other piece of evidence Boswell challenges as insufficient is the testimony of State's witness Jodie Bennett, who had been a fellow inmate of Boswell. Bennett testified that in 1991 he was incarcerated at the Pendleton facility. Boswell arrived there and was placed in a cell with Bennett's half-brother. As all three men were housed in the same unit and were all from the Terre Haute

area, they formed a bond. Bennett testified that he and Boswell were together almost every day playing cards, going to the gym, playing pool, playing ping pong, and dining together. Bennett further testified that as they were playing pool one day, Boswell told him that he had killed someone. *Id.* at 589. Bennett stated he did not believe Boswell and instead thought that Boswell was just trying to "sound like [a] tough guy[ ]." *Id.* When the two men were playing pool again a few days later, Bennett asked Boswell who he had killed and why. Bennett testified that although Boswell did not tell him who he had killed, Boswell told him that he had made sexual advances toward a woman which were rejected, and he thought she would tell someone about his advances, so he killed her. *Id.* at 590. Boswell also told Bennett that a child was present and that he had tried to kill the child as well. *Id.* After that, Boswell said he did not want to talk about it any more.

[26] Subsequently in 2010 Bennett saw an article in a Terre Haute newspaper about Boswell's arrest for the murder of a woman and the attempted murder of her young child. Detective Guinn of the Indiana State Police was named in the article, so Bennett sent him a letter. Before Bennett's letter reached Detective Guinn, the detective came to the prison to speak to Bennett about a different case, and Bennett told him about Boswell's statements.

[27] Bennett additionally testified that he is in prison for a double homicide to which he pleaded guilty. He indicated he is remorseful for his actions and will "give back to somebody else's family" if he has the chance. *Id.* at 601. To that end, Bennett acknowledged that he had previously testified about a confession from

a fellow inmate in another murder case. Bennett further testified that in the previous case as well as this one he had neither asked for any leniency or special treatment nor had he been offered any.

[28] In addition to the testimony of McGuire and Bennett, the jury heard the testimony of William Wilson who is employed with the Indiana Department of Correction. He testified that, pursuant to prison records, Bennett and Boswell were housed in the same unit of the Pendleton facility from October 1991 to March 1992. Detective Guinn testified that the police believed Bennett was being truthful when he talked to them about Boswell's statement because he had certain information — that the crime was of a sexual nature — that had not been released to the media.

[29] Moreover, David Montgomery, a neighbor of the Bakers, testified that in 1979 he and Boswell had frequently ridden a dirt bike and three wheelers back in the area where Ryan and Kathy Jo's body were found. Laura Sherrill, a close friend of Kathy Jo's, testified that the Thursday before Kathy Jo went missing she was on her way to Kathy Jo's house when a yellow Vega passed her several times on Kathy Jo's road. As she and Kathy Jo were sunbathing that day, the car passed Kathy Jo's house several more times, and, at one point, Kathy Jo yelled, "[W]hy don't you take a picture, it'll last longer." *Id.* at 702. Both Eva Knopp, a friend of Kenny's family, and Detective Guinn testified that in 1979 Boswell drove a yellow Vega. The evidence, including the DNA evidence and the testimony of inmate Bennett, was sufficient to support Boswell's convictions

of the murder of Kathy Jo and the attempted murder of Ryan beyond a reasonable doubt.

## 4. Motions for Mistrial

[30]     Next, Boswell contends that the trial court erred by denying his motions for mistrial. A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Donnegan v. State*, 809 N.E.2d 966 (Ind. Ct. App. 2004), *trans. denied*. The denial of a mistrial is a determination within the trial court's discretion, and we will reverse its decision only for an abuse of that discretion. *Id.* To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that he was placed in a position of grave peril to which he should not have been subjected. *Williams v. State*, 755 N.E.2d 1128 (Ind. Ct. App. 2001), *trans. denied*. The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision. *Id.* "We accord great deference to the trial court's decision, as it is in the best position to gauge the circumstances and the probable impact on the jury." *Donnegan*, 809 N.E.2d at 972.

[31]     During direct examination, McGuire testified that she performed a presumptive test for blood on the reddish-brown stain on the back of the t-shirt and got a positive result. Tr. 3rd Trial p. 785. She did not perform a confirmation test for blood on the stain because, due to the stain's size, the confirmation test would have consumed the entire stain leaving nothing for DNA analysis. *Id.* at 786. On re-direct, the State asked this question of McGuire: "If any marker that

you're able to generate from that spot of blood on that shirt does not match the defendant what . . ." *Id.* at 862. Defense counsel objected, and the State restated the question as: "The presumptively positive spot for blood on that shirt, if any marker doesn't match the defendant from that, would he be excluded?" *Id.* McGuire answered in the affirmative.

[32] Defense counsel requested that the jury be excused and requested a mistrial. In support of the motion, defense counsel argued that the State's question about a spot of blood mischaracterized the evidence because, although the spot tested presumptively positive for blood, no confirmatory test was performed on the spot. The State responded that it was a statement by counsel, and therefore not evidence, and that it could be corrected both by an admonishment and on cross-examination. The court denied the mistrial, admonished the jury, and allowed defense counsel to cross-examine McGuire. The court admonished the jury as follows:

> Before we took a break you heard a question and answer from the uh, the question from the State of Indiana and answer from the uh witness. I'm gonna order that answer stricken from the record. And the question and the answer stricken from the record. You're not to consider that in any way. The test that was performed on that area of that shirt was a presumptive for blood it was not, there was no conclusive proof that that was a spot of blood.

*Id.* at 870.

[33] Later, during the State's rebuttal closing argument, the deputy prosecutor argued, "This isn't where somebody got their blood on something and then that

touched her because it, it was to [sic], to [sic] deep in the fibers. She said no transference it had to actually been blood that was put on the shirt directly." *Id.* at 923. Boswell's counsel objected and the deputy prosecutor stated, "I'm sorry, the . . . [t]he DNA, I'm sorry Judge. It was the DNA. It's the DNA. The DNA that was on her, was on her shirt." *Id.* The trial court then interjected with this admonishment: "The jury, the jury [sic] is to disregard his statement about blood. There was no presumptive, or there was no conclusive evidence that any, that was blood." *Id.* at 923-24. The deputy prosecutor again clarified, "That is the fact. It, that it's only the presumptive test and that's it." *Id.* at 924.

[34] After final instructions were given and the jury retired to deliberate, defense counsel again requested a mistrial. The State argued that the court's response of admonishing the jury when the misstatements occurred and instructing the jury in final instructions that statements of the attorneys are not evidence was sufficient to cure any error. The State added that if the court deemed it necessary, the proper action would be for the court to further admonish the jury. The court agreed with the State and denied Boswell's motion for mistrial.

[35] When the deputy prosecutor mischaracterized the test results of the stain in posing a question to McGuire on re-direct, he immediately restated his question to correct the misstatement. The trial court then struck the question and answer from the record, admonished the jury not to consider the question and answer in any way, and clarified that the result of McGuire's testing of the stain was presumptive for blood but was not conclusive proof that the substance was

blood. We presume the jury followed the trial court's admonishment. *Street v. State*, 30 N.E.3d 41 (Ind. Ct. App. 2015), *trans. denied*.

[36] In the second instance, the deputy prosecutor misspoke during rebuttal closing argument and immediately corrected his mistake. He also later clarified again that the blood testing on the stain was only presumptive. The trial court admonished the jury to disregard the State's statement about blood and reminded the jury that the test was not conclusive. Additionally, in its final instructions, the trial court instructed the jury that statements made by counsel are not evidence.[5] We not only presume the jury obeyed the trial court's admonishment, *id.*, but also we presume that jurors followed the court's instructions. *See Carpenter v. State*, 15 N.E.3d 1075 (Ind. Ct. App. 2014), *trans. denied*.

[37] Boswell made no showing that he was placed in a position of grave peril to which he should not have been subjected by the State's misstatements. Regardless, based on the record, we conclude the trial court properly and timely admonished the jury following immediate correction of the misstatements by the State, and any error stemming from the misstatements was cured. Reversible error is seldom found when a trial court has admonished the jury to disregard a statement made during the proceedings. *Burks v. State*, 838 N.E.2d

---

[5] In final instruction number eighteen, the trial court instructed the jury as follows: "Statements by counsel - Statements made by the attorneys are not evidence." Tr. 3rd Trial p. 941.

510 (Ind. Ct. App. 2005), *trans. denied*. The trial court did not abuse its discretion by denying Boswell's motions for mistrial.

## 5. Sentencing

[38] As his final claim of error, Boswell asserts that he was sentenced in violation of the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Although Boswell was sentenced in 2015, he committed these offenses in 1979 well before the April 25, 2005 revisions to our sentencing statutes. Therefore, in this case we apply the former presumptive sentencing scheme rather than the current advisory sentencing scheme. *See Gutermuth v. State*, 868 N.E.2d 427, 431 n.4 (Ind. 2007) (explaining that 2005 revisions to sentencing statutes did not alter long-standing rule that sentencing statute in effect at time crime is committed governs sentence for crime). As applied to Indiana's presumptive sentencing scheme under which Boswell was sentenced, *Blakely* prohibits the reliance on facts not found by a jury or admitted by the defendant to enhance a sentence above the presumptive, with the exception of criminal history. 124 S. Ct. 2531. Other than the bald assertion that he was entitled to have a jury determine the facts used to aggravate his sentence for his attempted murder conviction, Boswell presents no argument on this issue.

[39] As an initial matter, we address the State's argument that Boswell waived any challenge under *Blakely* because he did not make an objection at the time of sentencing. Our Supreme Court has rejected this waiver argument. *See Kincaid*

*v. State*, 837 N.E.2d 1008 (Ind. 2005) (holding that for cases in which appellant's initial brief was filed after date of decision in *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005), a specific *Blakely* claim must be made in appellant's initial brief on direct appeal for it to be reviewed on merits).[6] Here, Boswell raised his *Blakely* claim in his initial appellant's brief.

[40]   Attempted murder is a Class A felony. Ind. Code § 35-41-5-1(a) (1977). In 1979, the presumptive sentence for a Class A felony was thirty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Ind. Code § 35-50-2-4 (1977). For his conviction of the attempted murder of Ryan Baker, Boswell was sentenced to forty-five years. At his sentencing, the trial court stated:

> Mr. Boswell with regard to the aggravating circumstances, I know you don't have much criminal history but the criminal history you have is significant. You spent thirty years at the Indiana Department of Corrections [sic] for criminal confinement, criminal deviate conduct and the victim was compelled by force or an imminent threat of force and then the criminal confinement was armed with a deadly weapon and then rape. That's significant. There's also as to the, and that goes toward both counts. As to the count against Ryan, the attempted murder. Ryan was two years old at the commission of this crime. This violent crime. Against his mother and against him.

---

[6] We note that in *Kincaid*, the sentencing hearing occurred just two weeks after *Blakely* was issued and that Boswell's sentencing in 2015 occurred almost eleven years after the *Blakely* decision. Although we acknowledge that "a party may not sit idly by, permit the court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time," *see Robles v. State*, 705 N.E.2d 183, 187 (Ind. Ct. App. 1998), we are constrained to abide by the precedent set by our Supreme Court.

> If not for a few more hours this would have been a double murder. He was present when his mother was murdered. For the past almost thirty six [sic] years the emotional and psychological impact is it, it has had on Ryan and for that being the whole uh, Baker family. There are no mitigating circumstances in this case.

Tr. Sent'g. Hrg. p. 43.

[41] Clearly, Boswell's prior convictions do not violate *Blakely* and thus are a valid aggravator. Moreover, his prior convictions are particularly relevant given the fact that they were of a sexual nature as was the attack in this case.

[42] The latter part of the judge's comments referring only to the attempted murder of Ryan appear to be an acknowledgement of the horrific nature of this crime and its ripple effect on family, friends, and the community rather than an independent basis for enhancement. If, however, the trial court used the nature and circumstances of the crime as an aggravator, it is improper under *Blakely* because it was based on facts neither found beyond a reasonable doubt by a jury nor admitted by the defendant.

[43] Ultimately, a single aggravating circumstance is adequate to justify a sentence enhancement. *See Williams v. State*, 891 N.E.2d 621 (Ind. Ct. App. 2008). Given the significance that the trial court placed on the aggravating factor of Boswell's prior convictions and that the trial court found no mitigating factors, we find no error in Boswell's enhanced sentence for the attempted murder of Ryan Baker. *See Davis v. State*, 835 N.E.2d 1087 (Ind. Ct. App. 2005) (stating that if trial court has improperly relied on aggravators neither found by jury nor

admitted by defendant, sentence may still be upheld if other valid aggravators exist from which court on appeal can discern that trial court would have imposed same sentence).

Boswell also alleges, without any supporting argument or case citation, that the trial court's imposition of consecutive sentences was in violation of *Blakely*. He is incorrect. In *Smylie*, our Supreme Court held that the imposition of consecutive sentences does not implicate *Blakely*. 823 N.E.2d at 686 (holding there is "no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums"). We find no error in the trial court's sentencing of Boswell.

In light of the foregoing, we affirm the judgment of the trial court.

Judgment affirmed.

Bailey, J., and Bradford, J., concur.