[Cite as *State v. Hodges*, 2018-Ohio-447.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 17 MA 0025 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| KIMANI O. HODGES, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 16 CR 00169

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty Edward A. Czopur
DeGenova & Yarwood, Ltd.
42 N. Phelps St.
Youngstown, Ohio 44503

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: January 30, 2018

ROBB, P.J.

{¶1} Defendant-Appellant Kimani Hodges appeals the decision of the Mahoning County Common Pleas Court denying his motion to dismiss his criminal case on double-jeopardy grounds. Appellant contends the prosecutor engaged in misconduct and intentionally goaded the defense into seeking a mistrial, which triggered the exception to the doctrine allowing retrial after a court grants a defendant's mistrial motion. For the following reasons, the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

{¶2} On February 17, 2016, Jason Fonseca was shot multiple times in front of his house. That same day, Appellant was arrested and charged with the murder. On February 25, 2016, Appellant was jointly indicted with Angel Bell on a count of aggravated murder for purposely causing the victim's death with prior calculation and design. A firearm specification was attached to the charge. Appellant was also indicted for having a weapon while under disability, and he waived his right to a jury trial on this offense.

{¶3} The joint jury trial for the aggravated murder count commenced on January 3, 2017, on which date a jury was impaneled and sworn. The state presented evidence on January 4 and 5, 2017. Partway through the state's case, Noel Rios was called as a witness. He explained he was dressed in orange as he was a federal prisoner. (Tr. 266-267). The victim was his cousin, and he witnessed the daylight shooting as he stood outside near the scene. (Tr. 268-269). He said: Appellant pulled up in a vehicle; Appellant spoke to him; the victim came out of the house and argued with Appellant; Appellant brandished a gun; the victim and Appellant tussled over the gun; and multiple shots were fired into the victim, including after he had fallen. (Tr. 270-273). Rios also said Ms. Bell was sitting in the passenger seat of the car from which Appellant alighted. (Tr. 274-275, 287).

{¶4} Appellant's counsel began cross-examining Mr. Rios. (Tr. 277). Counsel raised some inconsistencies in his testimony as compared to his statement to police. Rios watched his video statement, and cross-examination continued.

Counsel then paraphrased an answer given by Rios in the video statement and invited the witness, "correct me if I'm wrong." Responding to the invitation, Mr. Rios added the part of his answer he believed counsel was omitting. (Tr. 293). Counsel then repeated his statement in question form, which Rios answered and again added the omitted part of his statement: "Yeah, I said he was about my height". At this point, counsel admonished the witness, "Once again I'm asking the questions." The court then interjected, "Excuse me. What did I tell you? Do you want the witness instructed?" Counsel replied, "Judge, you're right. I apologize." (Tr. 294).

{¶5} The court instructed the witness to just answer the question asked. The witness then repeatedly voiced he had nothing more to say. When counsel said the witness should be instructed to answer or face the consequences, the witness said he was already facing 15 years. (Tr. 295). The court then allowed the defense to play for the jury the video of the witness's statement to police. Rios was then brought back to the stand. The court noted each side had the right to ask questions and added, "They don't have a right to ask you, to keep asking you the same question over and over." Rios responded, "Well, that's how I feel." (Tr. 300). The witness insisted he had "no more to tell" and was not answering any more questions. (Tr. 301-303). He swore at Appellant's attorney using a disturbing and strange suggestion. (Tr. 302). The court committed the witness to jail for contempt until he answered the questions.

{¶6} Defense counsel moved to strike the testimony of Rios in its entirety and to instruct the jury to disregard his entire presence at trial. Counsel said a mistrial was required if the motion to strike was not granted. (Tr. 305). Counsel for co-defendant Bell then attempted to question Rios, but he would not respond. (Tr. 308-309). The court contemplated having the witness meet with an attorney or his federal public defender, but the defense objected. (Tr. 315-317, 320-321). Once again, the witness was brought to the stand, and he indicated he was not willing to answer questions. (Tr. 327). The court recessed for over 1.5 hours. (Tr. 328).

{¶7} When the case resumed, the motion to strike was addressed. Appellant's attorney indicated the witness stopped participating before he completed

cross-examination and thus Appellant's confrontation rights were violated. (Tr. 329). The court found Bell's right to confrontation was violated as her attorney was unable to engage in any cross-examination. (Tr. 330). The court noted Appellant's attorney engaged in cross-examination on various topics and asked counsel to explain what more he would have asked. (Tr. 331). Counsel set forth some examples. The state characterized the argument as counsel complaining "he wasn't allowed to ask enough times, and again and again; and badger this witness and make this witness more upset." (Tr. 339). The state noted "asked and answered" was a common court instruction to counsel during cross-examination. (Tr. 340).

{¶8} The court granted Appellant's motion to strike the testimony of the witness. (Tr. 343). The state then announced it reached an agreement with Bell calling for: the state to take a proffer from Bell; she would agree to testify truthfully in Appellant's case; and in return, the state would dismiss all charges against her with prejudice and release her immediately. (Tr. 343-345). The court discussed the agreement with Bell and accepted the dismissal of the case against her.

{¶9} Appellant's attorney moved for a mistrial. Noting the change in the evidence against his client, he emphasized the case would have been presented to the jury in a different fashion if this new evidence was available before trial. (Tr. 348). He said he had no idea what Bell's testimony would be because her prior statements to police denied any involvement and said Appellant was with her during the incident. (Tr. 348-349). When the court asked if the state wished to be heard on the mistrial motion, the state indicated it did not. The court then asked, "Are you expecting me to grant it?" (Tr. 349). The state replied the decision was expected because defense counsel did not yet view Bell's new statement. (Tr. 349-350).

{¶10} The trial court granted a mistrial on Appellant's motion, excused the jury, and remanded Appellant to custody pending further order. The court declined to address, at that time, the suggestion by the defense that double jeopardy barred retrial. (Tr. 350). The court memorialized the occurrences and the granting of a mistrial in a January 9, 2017 judgment entry.

**{¶11}** On January 23, 2017, Appellant filed a motion to dismiss on double-jeopardy grounds. He suggested the state's failure to prepare Rios for trial resulted in the witness's refusal to participate, alleging this was foreseeable. He said he had no choice but to seek a mistrial due to the co-defendant becoming a key witness mid-trial without prior notice. Appellant said the state should have sought Bell's testimony prior to trial rather than during it. He claimed the exception to the retrial rule applied because his mistrial motion was precipitated by prosecutorial misconduct intentionally calculated to cause a mistrial.

**{¶12}** The state responded it was surprised by the witness's reaction at trial and did not cause it, suggesting defense counsel may have caused the reaction by "badgering" the witness. The state urged there was no intentional act of deception or intent to do anything besides present available testimony. The state noted it entered a deal with "the non-shooter" after the eyewitness refused to continue with cross-examination and a motion to strike his entire testimony was under consideration. In writing, both sides waived a hearing on the motion to dismiss.

**{¶13}** On February 3, 2017, the trial court denied Appellant's motion to dismiss. The court described the situation as "an unusual set of circumstances that developed during trial." The court did not agree with the characterization of defense counsel's cross-examination as "badgering the witness." The court found there was no prosecutorial conduct amounting to an intentional act of deception and the state did not goad the defendant into moving for mistrial. Appellant filed a timely appeal. "[T]he denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 26.

ASSIGNMENT OF ERROR: DOUBLE JEOPARDY

**{¶14}** Appellant's sole assignment of error provides:

"Denial of the Appellant's motion to dismiss violated his protections pursuant to the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution as applied by the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution."

**{¶15}** Appellant states Rios was the only eyewitness and the state's case hinged on his testimony. He complains the state entered a deal with Bell only after realizing they no longer had a case. He notes his attorney could not properly continue with the trial upon learning the co-defendant would "get up from her table in the middle of trial and move to the State's table" with the content of her new statement unknown. He was therefore forced to seek a mistrial. Appellant emphasizes how the state acknowledged it "expected" a mistrial to be granted. Appellant says his opportunity to receive an acquittal at this trial was impaired (and the prosecutor thus gained an advantage at this trial), contending if the state did not offer the deal to Bell, the trial would have continued and he would have been acquitted. He complains the state goaded him to seek a mistrial by offering Bell a deal mid-trial and concludes the offer constituted prosecutorial misconduct because the state knew it would necessitate the discontinuation of trial.

**{¶16}** The Fifth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment, provides in pertinent part: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Ohio's Constitution at Section 10 of Article I states: "No person shall be twice put in jeopardy for the same offense." As the protections afforded by these two double jeopardy clauses are "coextensive," the same analysis applies to double jeopardy claims brought under either constitution. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 14.

**{¶17}** The Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. *State v. Loza*, 71 Ohio St.3d 61, 71, 641 N.E.2d 1082 (1994), citing *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). However, the Double Jeopardy Clause does not bar a retrial when a defendant's motion for a mistrial is granted. *Loza*, 71 Ohio St.3d at 71, citing *Kennedy*, 456 U.S. at 673. There is a "narrow exception" where the defendant's motion for a mistrial "is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial." *Loza*, 71 Ohio St.3d at 71, citing *Kennedy*, 456 U.S. at 678-679.

**{¶18}** To invoke the exception, there must be prosecutorial misconduct accompanied by prosecutorial intent. *Kennedy*, 456 U.S. at 675-676 ("Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."). "Only where the prosecutorial conduct in question is intended to 'goad' the defendant into moving for a mistrial may defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Loza*, 71 Ohio St.3d at 71, quoting *Kennedy*, 456 U.S. at 676. As the state points out, a retrial is not barred on double jeopardy grounds where the state's mere negligence, rather than intentional misconduct, required the trial court to grant a mistrial on a defense motion. *State v. Wood*, 114 Ohio App.3d 395, 400, 683 N.E.2d 354 (10th Dist.1996), citing *United States v. Dinitz*, 424 U.S. 600, 607,611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (where circumstances develop not attributable to prosecutorial misconduct, the defendant's motion for mistrial ordinarily removes any barrier to re-prosecution, even if the motion is necessitated by prosecutorial error).

**{¶19}** In *Loza*, the state failed to disclose a chemical analysis report until the morning of the last day of trial because the prosecution was not aware of it until that time. The Supreme Court found no indication the state engaged in an intentional act of deception or intentionally withheld exculpatory evidence. *Loza*, 71 Ohio St.3d at 72. The concern was not whether (at the time of disclosure) the state expected the new report would require the defense to seek a mistrial. The concern was not whether the state *intentionally disclosed* the report when it was discovered but was whether the state *intentionally withheld* the report in order to goad a mistrial.

**{¶20}** The state's expectation in a certain case may be a consideration in determining the state's intent. *See, e.g., State v. Greene*, 7th Dist. No. 02 CA 122, 2005-Ohio-4240, ¶ 24 (noting a concurring justice suggested some factors which could be relevant), citing *Kennedy*, 456 U.S. at 680 (Powell, J., concurring). Nevertheless, when the co-defendant presents herself to the state with an important and previously-unknown story after the joint trial commenced, the state's disclosure

of the situation and dismissal of the co-defendant's charges need not be categorized as intentionally calculated to cause a mistrial merely because an attorney in this situation would expect a trial court to grant a mistrial request by the defense. *See Greene*, 7th Dist. No. 02 CA 122 at ¶ 4-5 (finding no intentional conduct by the state where a witness who appeared for trial brought with her a new witness, who was previously mentioned to the prosecution but unnamed). *See also United States v. Papajohn*, 848 F.Supp. 334, 339-340 (E.D.N.Y.1994) (rejecting a defendant's claim that the prosecutor intentionally goaded a mistrial by insisting on going forward with new evidence which clearly left defense counsel with no choice but to request a mistrial). What ultimately matters is whether the defendant's mistrial request was precipitated by prosecutorial misconduct intentionally calculated to provoke a mistrial. *Loza*, 71 Ohio St.3d at 71, citing *Kennedy*, 456 U.S. at 678-679.

**{¶21}** Here, the initial situation faced at trial was a key witness's refusal to continue answering questions during cross-examination by Appellant's attorney. This was not a foreseeable situation. In fact, the witness testified on direct examination from pages 266-277 of the transcript. He also testified on cross-examination by Appellant's counsel, encompassing pages 277-294 of the transcript. Bell's attorney was unable to question the witness at all. His refusal to participate further in the trial had nothing to do with the state's conduct. In addition, the state protested Appellant's motion to strike the eyewitness's testimony on the grounds that Appellant had sufficient opportunity to cross-examine the witness and this questioning prompted the witness's extreme response. (A motion to strike by Bell was more difficult to protest.) In discussing a way to encourage the witness to resume his participation in the trial, Appellant objected to any attempt to inform the witness that his testimony might be eliminated from the trial if he refused to continue with cross-examination or that he was a key witness in the case of his cousin's murder.

**{¶22}** Appellant complains the state did not offer his co-defendant this deal prior to trial, suggesting mid-trial is too late to deal with co-defendants. There is no indication Bell would have turned against her boyfriend prior to trial. According to defense arguments, she provided Appellant with an alibi in two statements to police.

The state had less incentive to accept a deal from her or offer her a deal prior to trial. Considering the contextual evidence collected before trial and Bell's provision of an alibi for Appellant, the state believed Bell instructed her new boyfriend (Appellant) to shoot her former boyfriend (the victim). During trial, however, the state was faced with the situation of Bell being unable to confront her accuser and the defense moving to strike this key witness's testimony in full.

**{¶23}** The trial court concluded the state engaged in no act amounting to an intentional act of deception and the state did not goad Appellant into moving for a mistrial. Entering the deal with the co-defendant did not involve prosecutorial misconduct. The prosecution did not have a statement from Bell incriminating Appellant prior to trial. Rather, Bell had given statements protecting Appellant and herself. The state was provided a new statement by Bell at trial (with conditions). As this new statement did not previously exist, the state did not fail to disclose evidence (let alone intentionally withhold evidence). The prosecutor was merely accepting and disclosing new evidence and new circumstances presented to the prosecution mid-trial; there was no indication of bad faith. *See, e.g., State v. Hill*, 1st Dist. No. C-971098 (Feb. 19, 1999) (rejecting a defendant's claim that the prosecutor deliberately goaded the defense into requesting a mistrial because the prosecutor insisted on using new, previously undiscovered evidence). *See also Greene*, 7th Dist. No. 02 CA 122 (named witness appeared to testify at trial and brought with her another previously-unnamed witness).[1]

**{¶24}** Moreover, the trial court could properly conclude the prosecutor's intent was not to goad the defendant into moving for a mistrial. Obviously, there is a prosecutorial motive to introduce incriminating evidence against a defendant. This prosecutorial motive did not equal an intent to create error in order to force a new trial

---

[1] The Supreme Court of Indiana upheld a decision finding no double jeopardy violation on the grounds that the prosecutor's plea deal with the co-defendant during the defendant's trial was performed in order to convict the defendant, not to goad him into moving for a mistrial. *Butler v. State*, 724 N.E.2d 600, 604 (Ind.2000) (even where mid-trial negotiations were a revival of prior discussions). *See also State v. Dickens*, 187 Ariz. 1, 12, 926 P.2d 468, 479 (1996) (Arizona Supreme Court found the state's entry into a plea agreement with the co-defendant after the state rested in the defendant's case was not bad faith; where the trial court permitted the state to reopen its case).

under the circumstances of this case. The intent by the prosecutor was to convict the defendant with the co-defendant's testimony. The state did not gain material advantage from the mistrial itself. For instance, the state could have proceeded through the in-progress trial with Bell's case dismissed and Bell as the state's witness. However, because this situation would negatively affect Appellant's defense, Appellant asked for and was granted a mistrial. In fact, Appellant had asked for the declaration of a mistrial if the trial court refused to grant Appellant's motion to strike the eyewitness's testimony, and this was before there was any indication Bell would strike a deal with the prosecution. (Tr. 305).

**{¶25}** Notably, the state was still presenting its case-in-chief. In addition, although Bell was not on the state's witness list, she was a jointly indicted co-defendant. Appellant therefore knew of her status as a potential witness. She could have testified in her own defense and incriminated Appellant.

**{¶26}** In sum, this court concludes prosecutorial misconduct is lacking and the conduct at issue was not performed with intent to precipitate a mistrial. Consequently, retrial is not barred under double jeopardy principles. In accordance, the trial court's judgment is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.