**Ruben GREEN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0610–CR–557.**

Court of Appeals of Indiana.

Oct. 31, 2007.

Transfer Denied Dec. 20, 2007.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Ruben Green was convicted of murder. He argues his retrial after a mistrial subjected him to double jeopardy, the trial court should have declared the second trial a mistrial, the jury was improperly instructed, and the evidence was insufficient for a conviction of murder. We affirm his conviction.

### FACTS AND PROCEDURAL HISTORY

Ruben Green and Sharon Glass were involved in a romantic relationship from November 2003 to September 2004. On September 3, after the relationship had ended, Glass reported a computer and two DVD/VCR players had been taken from her home. The burglary upset Glass, so she and her new boyfriend, Robert Dunn, spent the night at a hotel. When she returned home the next day, she found her television had been stolen. That day, she reported Green had beaten her and told police she suspected he was involved in at least one of the burglaries. Dunn testified Green spied on Glass, called her frequently, and left a message stating she "was going to regret leaving me, bitch." (Tr. at 625.)

Robert Locke, a friend of Glass, was dating a woman who lived in the same apartment complex as Green. Locke was at the complex frequently. Green told Locke he had stolen some of Glass' property, and Locke saw him pawn some of the items. Locke told Glass that Green had her property, but did not tell her Green had pawned the items.

On September 13, Glass told Dunn that Green had called her, saying he was will-

ing to return her property. Glass went to Green's apartment complex, where she saw Locke sitting outside. Glass told him that she had come to get her things from Green. She told him if she was not out in fifteen minutes, he should call the police.

Locke did not take her comment seriously and returned to his girlfriend's apartment. About fifteen minutes later, Green appeared at the door of Locke's girlfriend's apartment and told Locke that Glass had hit him in the head with a bottle. Locke and Green ran back to Green's apartment, where Locke saw Glass sitting in a chair. She was bloody and wearing only panties and a shirt. Her mouth was open and her eyes were rolled back in her head. Locke ran back to his girlfriend's apartment to call 911. Green also called 911 and began CPR on Glass as instructed.

Paramedics arrived to take Glass to the hospital, and she died en route. Green was taken into custody. After being advised of his *Miranda* rights, Green claimed Glass had hit him in the head with his clock and bit him, the attack was unprovoked, and he had hurt her in the course of warding off her attack.

Green was charged with murder and was originally tried in May 2006. During the trial, Detective Claire Hochman discovered she had relevant telephone records in her possession. They were not certified and had not been provided to the defense during discovery. Detective Hochman handed the records over to the prosecutor, who in turn gave a copy to the defense counsel. The State acknowledged they could not be admitted at trial. Neither party informed the judge of this situation.

While Detective Hochman was on the stand, a juror asked a question about phone records. Green's counsel attempted to object, but because the judge was unaware of the discovery violation, he cut counsel short and permitted questions

about the records. Detective Hochman testified she had records of calls between Glass, Locke, and Green. When the prosecutor began to ask Detective Hochman additional questions, Green's counsel asked to approach the bench. Counsel was finally able to explain the situation to the judge, and a mistrial was declared.

Green moved to dismiss the charges, but his motion was denied. The case proceeded to a second trial in August 2006. The parties were told not to refer to the first trial and to instruct their witnesses accordingly. However, Glass' mother, Deborah Ellis, referred to "the prosecutor from the last trial" during her testimony. (*Id.* at 79.) Green did not object, but the judge admonished the prosecutor, who claimed he had prepared his witnesses and the reference was inadvertent.

By agreement, the parties played a tape of forensic scientist Judith Macechko's testimony from the first trial. The tape was to be edited to remove any indication the testimony was from a previous trial. Nevertheless, multiple comments on the tape indicated Macechko was testifying before a jury. Again, Green failed to object. When the judge admonished the State a second time, Green moved for a mistrial. The trial court denied the motion, but offered a curative instruction. Green declined to have the jury admonished. The second trial resulted in a conviction of murder.

## DISCUSSION AND DECISION

### 1. *Double Jeopardy*

■ Green argues the retrial subjected him to double jeopardy. We disagree. The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Article 1, Section 14 of the Indiana Constitution provides: "No person shall be put in

jeopardy twice for the same offense." Indiana Code § 35–41–4–3 elaborates on this provision:

> (a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:
>
> \*     \*     \*     \*     \*     \*
>
> ██ (2) the former prosecution was terminated after the jury was impaneled and sworn or, in a trial by the court without a jury, after the first witness was sworn, unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination....
>
> (a) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, with intent to cause termination of the trial, another prosecution is barred.

Therefore, if a defendant moves for mistrial, he forfeits any double jeopardy claim unless "the motion for mistrial was necessitated by governmental conduct 'intended to goad the defendant into moving for mistrial.'" *Willoughby v. State*, 660 N.E.2d 570, 576 (Ind.1996) (*quoting Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). The focus of the inquiry is the subjective intent of the prosecutor. *Wilson v. State*, 697 N.E.2d 466, 472 (Ind.1998). This is a factual determination, which we affirm unless clearly erroneous. *Butler v. State*, 724 N.E.2d 600, 604 (Ind.2000).

The trial judge indicated he felt Green had tried to make a proper objection, (Tr. at 915), and the mistrial was "the responsibility of the State." (*Id.* at 51.) However, these comments are not inconsistent with his decision the prosecution did not intentionally cause a mistrial. The prosecutor did not intentionally withhold the phone records and did not know about them until near the end of the trial. The issue of the phone records came up through a jury question, which the judge required the witness to answer without allowing the parties adequate opportunity to object. In the hearing on the motion to dismiss, the prosecutor stated he felt the trial had been going well and did not want a mistrial. The judge found that to be true, and we decline to reweigh the evidence. Based on these facts, the decision was not clearly erroneous.

### 2. *Denial of Motion for Mistrial during Second Trial*

██ Green claims the second trial should have been declared a mistrial because of the references to the first trial. "The determination of whether to grant a mistrial is within the trial court's discretion, and to prevail on appeal, the defendant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected." *Olson v. State*, 563 N.E.2d 565, 571 (Ind.1990). Peril is measured by the probable persuasive effect on the jury, rather than the impropriety of the State's conduct. *Gregory v. State*, 540 N.E.2d 585, 589 (Ind.1989). The appellant has the burden of showing there is no other adequate remedy. *Id.* To preserve this issue for appeal, a party must timely object and request an admonition or mistrial. *Brown v. State*, 799 N.E.2d 1064, 1066 (Ind.2003).

Green argues he was prejudiced because "the second jury was left to speculate regarding what may have happened in the prior trial, or worse, that Ruben Green may have been tried in an unrelated case with an unrelated victim." (Appellant's Br. at 14.) However, the trial court offered to give an explanation to the jury to resolve any such speculation, and Green

declined. Green did not object to any reference to the previous trial. Had Green objected when Macechko was asked to identify herself to the jury, the second jury would not have heard subsequent statements indicating her testimony was taped from a previous trial. Therefore, Green has not properly preserved the issue for appeal.

### 3. Propriety of the Jury Instructions

Green next claims the trial court erroneously instructed the jury on two points. Jury instructions are within the discretion of the trial court. *Grossenbacher v. State*, 468 N.E.2d 1056, 1059 (Ind.1984). We review jury instructions for abuse of discretion. *Collier v. State*, 470 N.E.2d 1340, 1343 (Ind.1984). We consider the instructions as a whole, and we will not reverse unless the instructions misstate the law or otherwise mislead the jury. *Hartman v. State*, 615 N.E.2d 455, 458 (Ind.Ct.App.1993).

The trial court instructed the jury on murder and voluntary manslaughter as follows:

Sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter. The State has the burden of proving beyond a reasonable doubt that the defendant was not acting under sudden heat.

To convict the defendant of Murder, the State must prove each of the following elements beyond a reasonable doubt:

1. The defendant, Ruben Green, Jr.,

2. knowingly

3. killed Sharon Glass, another human being.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt that the defendant was not acting under sudden heat, you *may* find the defendant guilty of Voluntary Manslaughter, a class B felony, as covered under Count 1.

(Appellant's App. at 191–92) (emphasis supplied).

Green objects to the use of the word "may." He argues the instruction allowed the jury to disregard voluntary manslaughter even if the State failed to disprove sudden heat beyond a reasonable doubt. He asserts the word "shall" should have been used. We disagree.

The instructions state the government had the burden of proving beyond a reasonable doubt that Green was not acting in sudden heat. This burden was clearly and adequately explained to the jury. Taken in context, the word "may" indicates the jurors were not bound to find Green guilty of voluntary manslaughter. It does not indicate the jury could find him guilty of murder regardless of any evidence of sudden heat.

Article 1, Section 19 of the Indiana Constitution gives juries in criminal cases "the right to determine the law and facts." "A mandatory instruction in a criminal case that would, in fact, bind the minds and consciences of the jury to return a verdict of guilty upon finding certain facts, clearly invades the constitutional province of the jury." *Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416, 421 (1967); *see also Wright v. State*, 730 N.E.2d 713, 717 (Ind.2000). The word "shall" would convert the instruction to a mandatory instruction. Therefore, the trial court did not abuse its discretion.

Green also objects to the instruction concerning Indiana Evidence Rule 404(b) evidence. The instruction was:

Evidence has been introduced that the Defendant was involved in crimes and/or bad acts other than that charged in the Information. This evidence was received solely on the issues of Defendant's intent, motive, knowledge, and the relationship between the Defendant and Glass. This evidence should be considered by you only for the limited purposes for which it was received.

(Appellant's App. at 196.)

Green argues this instruction endorsed the State's theory of the case. At trial, the State argued the relationship between Green and Glass was characterized by frequent conflict, which demonstrated a motive and intent to commit murder. The evidence supported the instruction, and the instruction was a correct statement of the law. *See Spencer v. State,* 703 N.E.2d 1053, 1056 (Ind.1999). Therefore, the trial court did not abuse its discretion in giving this instruction.

### 4. *Sufficiency of the Evidence*

■ Finally, Green argues the evidence was insufficient to convict him of murder. We do not reweigh the evidence or judge the credibility of witnesses. *Dinger v. State,* 540 N.E.2d 39, 39 (Ind. 1989). We consider the evidence most favorable to the verdict, along with all reasonable inferences, to determine whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 39–40.

■ To obtain a murder conviction, the State must prove the absence of sudden heat when the defendant has raised the issue at trial. *Conner v. State,* 829 N.E.2d 21, 24 (Ind.2005). Sudden heat occurs when a defendant is provoked by anger, rage, resentment, or terror in a manner sufficient to obscure the reason of an ordinary person and prevent delibera-

tion and premeditation. *Stevens v. State,* 691 N.E.2d 412, 426 (Ind.1997).

Green claims the State did not carry its burden of disproving sudden heat. Specifically, he points to his two statements to the police that Glass was the initial aggressor and that she hit him on the head with a clock without warning. Green was treated for an injury to his head, and the clock had his blood on it. While this is evidence Green was hit with a clock, it does not necessarily corroborate his claim Glass was the aggressor. The State presented evidence Green lured Glass to his apartment by inviting her to retrieve her property even though he no longer had it. Dunn's testimony that Green had been harassing Glass, along with Locke's testimony that Glass was found in her panties, could reasonably lead the jury to discredit Green's claim he killed Glass in the course of warding her off. As discussed above, the jury was adequately instructed on voluntary manslaughter and the State's burden of proof. The evidence would permit a reasonable jury to find the State carried its burden. Therefore, the evidence was sufficient for a conviction of murder.

The judgment of the trial court is affirmed.

CRONE, J., and DARDEN, J., concur.