

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Byron Etter,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 16, 2016<br><br>Court of Appeals Cause No.<br>49A02-1508-CR-1263<br><br>Appeal from the Marion Superior Court<br><br>The Honorable J. Jeffrey Edens, Special Judge<br><br>Trial Court Cause No.<br>49G05-1301-FA-4106 |

**Barnes, Judge.**

## Case Summary

[1]     Byron Etter challenges the trial court's denial of his motion to dismiss. We affirm.

## Issue

The restated issue is whether the special judge properly denied Etter's motion to dismiss because the trial court did not "goad" Etter into moving for a mistrial.

## Facts

On January 24, 2013, the State charged Etter with Class A felony child molesting, Class B felony rape, Class B felony sexual misconduct with a minor, and Class D felony child solicitation. On July 21, 2014, Etter's jury trial began. The State's first witness was L.B., the alleged victim. Etter requested a mistrial twice during L.B.'s testimony. The first time, Etter objected to the foundation, or lack thereof, the State attempted to lay in order to admit certain photographs; he moved for a mistrial when the State described in front of the witness (but outside the presence of the jury) the substance of the foundational testimony it sought from her. The trial court denied Etter's motion.

Shortly thereafter, Etter attempted to cross-examine L.B. regarding what he described as inconsistencies between her answers to foundation questions the State asked outside the presence of the jury and her answers to the same line of questioning when her testimony resumed. The trial court disagreed that the statements were inconsistent and, after calling the parties to the bench, explained why it believed that to be the case. Defense counsel then asked, "Are you advocating for the State?" Tr. p. 90. The trial court responded, "No, absolutely not . . . I am offended by what you just said to me, absolutely not . . . I'm not advocating for anybody here, only justice . . . Only that the truth come

out." *Id.* at 91. The bench conference continued, and defense counsel again explained his interpretation of L.B.'s testimony. Toward the end of the discussion, the trial court said to defense counsel, "Just have it your way." *Id.* at 92.

[5]     The bench conference concluded, and this exchange took place:

> THE COURT:     It's Burger King today.
>
> [DEFENSE COUNSEL]:     Judge, I'm going to object to that comment. And at this time, I'm going to move for a mistrial because I believe --
>
> THE COURT:     I'm going to grant it.
>
> [DEFENSE COUNSEL]:     Okay.
>
> THE COURT:     I'm granting the mistrial.

*Id.* The jury exited the courtroom, and the trial court said:

> We're done. Thank you. I'm going to reset this for trial [a]nd I'm going to put it on my commissioner's calendar and you can have the rest of your cases in my court in front of the commissioner, [defense counsel]. Your attitude towards this Court has always been disrespectful and it was no less today. It's nothing less than I expected, actually. I don't know why I would have expected anything different. We can try this Thursday. I'll put it on her calendar and we can do the trial then.

*Id.* at 93.

[6]     Three days later, the trial judge recused herself, and this case was transferred to Marion County Superior Court Judge Grant Hawkins. Arguing double jeopardy barred his retrial, Etter filed a motion to dismiss. Attached to that motion were affidavits from two deputy public defenders who were present in the courtroom during Etter's trial. The affidavits set out what those attorneys heard and observed with regard to the "Burger King" comment and the bench conference that immediately preceded the comment. The State responded to Etter's motion. Judge Hawkins then recused himself, and our supreme court appointed a special judge. The parties declined the opportunity to make any further arguments with regard to Etter's motion to dismiss. In January 2015, the special judge made findings of fact and conclusions thereon and denied Etter's motion. In August 2015, the special judge granted Etter's motion to certify the January 2015 order for interlocutory appeal. We agreed to entertain Etter's interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

## Analysis

[7]     Etter contends that, pursuant to the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution,[1] double jeopardy bars his retrial. The Fifth Amendment to the United States

---

[1] Etter argues that we should afford him broader double jeopardy protection under our state constitution than that provided by the federal constitution. He contends that courts in other states, including Oregon and Arizona, have done so and urges us to follow suit. However, Etter cites to no Indiana precedent to support his request. We note that Indiana courts have not undertaken a separate analysis under our state constitution when addressing the double jeopardy issue Etter presents here. *See Willoughby v. State*, 660 N.E.2d 570, 575-76 (Ind. 19967); *Green v. State*, 875 N.E.2d 473, 476-77 (Ind. Ct. App. 2007), *trans. denied*. Thus, we do not separately address Etter's claim under the Indiana Constitution.

Constitution "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 102 S. Ct. 2083, 2087 (1982). The Double Jeopardy Clause further grants a defendant the right "to have his trial completed by a particular tribunal." *Id.* at 671-72, 102 S. Ct. at 2087. In general, when a defendant elects to terminate the proceedings against him or her, double jeopardy does not bar retrial. *See id.* at 672-73, 102 S. Ct. at 2088. However, there is a narrow exception to this rule: "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *Id.* at 674, 102 S. Ct. at 2088 (citation omitted). "[I]f a defendant moves for or consents to a mistrial, the defendant forfeits the right to raise a double jeopardy claim in subsequent proceedings unless the motion for mistrial was necessitated by governmental conduct 'intended to goad the defendant into moving for a mistrial.'" *Willoughby*, 660 N.E.2d at 576 (quoting *Kennedy*, 456 U.S. at 676, 102 S. Ct. at 2089).

[8]     We need not determine whether the trial court's intemperate remarks fall within the ambit of "governmental conduct." *Id.* The parties do not dispute that they do. We therefore address Etter's argument assuming, without deciding, that is the case.

[9]     The parties disagree regarding the standard of review we should apply. Etter contends that the standard of review on a claim of double jeopardy is de novo and that the standard of review regarding motions to dismiss is abuse of

discretion. He candidly acknowledges, however, our supreme court has stated that an appellate court examining a governmental actor's intent in these circumstances should consider the trial court's determination to be "very persuasive." Appellant's Br. p. 16 (quoting *Butler v. State*, 724 N.E.2d 600, 604 (Ind. 2000)). That is the argument the State adopts. Relying in part on *Butler*,[2] the State contends that where, as here, the trial court makes findings of fact and conclusions thereon, we should review its ruling under a clearly erroneous standard.

[10] Etter argues his case is distinguishable from *Butler*. He contends, in sum, that because the special judge was not present during Etter's aborted trial, he "had no more opportunity to assess the actor's intent than does an appellate court." Appellant's Br. p. 16. Instead, the special judge's review of the record, on which he based the findings of fact, "[was] like an appellate court's review: [he] ha[d] only the record to consider in making its determination of intent." *Id*. We agree.

---

[2] We note that the State relies on two other cases—*Robinson v. State*, 5 N.E.3d 362 (Ind. 2014), and *Candler v. State*, 837 N.E.2d 1100 (Ind. Ct. App. 2005)—in support of its argument regarding the standard of review. Neither of those cases examines the double jeopardy issue Etter raises here, however. In *Robinson*, our supreme court discussed whether and to what extent reviewing the video of a traffic stop constituted reweighing evidence when that video conflicted with a police officer's live testimony about the traffic stop. The trial court concluded the officer's testimony should be afforded more weight than the video. Our supreme court concluded that even though it was able to view the same video evidence the trial court did, it could not substitute its own judgment for that of the trial court by reweighing the evidence. *Robinson* differs from this case in that the trial judge in that case heard live testimony, which, obviously, was not before the reviewing court. The State cites to *Candler* for the general proposition that we review factual findings under a clearly erroneous standard. Because *Robinson* and *Candler* do not speak to the standard of review we should apply in addressing this particular double jeopardy question, and because *Robinson* is distinguishable, they do not persuade us to apply a more deferential standard of review.

In *Butler*, our supreme court stated, "Although a trial court's determination of prosecutorial intent is not conclusive for purposes of state appellate review, we do regard its determination as 'very persuasive.' It is a factual determination that we review under a clearly erroneous standard." *Butler*, 724 N.E.2d at 602-04 (citation omitted). But *Butler* is distinguishable from this case. In *Butler*, the same trial judge who presided over the trial and granted Butler's motion for a mistrial found that the circumstances necessitating the mistrial were not created by the State. In that case, the trial court was able to observe the participants in the trial and use those first-hand observations to determine whether the governmental actor intended to goad the defendant into requesting a mistrial. Here, however, the special judge was not present during Etter's aborted trial and, like us, had only the record to review.

We afford a trial court's findings of fact and conclusions thereon deference because "the trial court views the evidence firsthand and we review a cold documentary record." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 941 (Ind. 2005). Our supreme court has stated, "when 'the trial court rules on a paper record without conducting an evidentiary hearing,' as happened here, we are 'in as good a position as the trial court . . . to determine the force and effect of the evidence.' Under those circumstances, our review is *de novo*." *In re Adoption of C.B.M.* 992 N.E.2d 687, 691 (Ind. 2013) (quoting *GKN v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001)) (ellipses and emphasis in original). Because the special judge in this case did not view Etter's trial firsthand, its findings and conclusions regarding the trial court's intent are based on the same paper and

audio records now before this court. Thus, we are in as good a position as the special judge was to determine whether the trial court intended to goad Etter into requesting a mistrial. Our task, then, is to assess whether the subjective intent of the trial court was to goad Etter into moving for a mistrial. *See Farris v. State*, 753 N.E.2d 641, 646 (Ind. 2001) ("The subjective intent of the [governmental actor] is the dispositive issue") and *Kennedy*, 456 U.S. at 667, 102 S. Ct. at 2088.

[13] The special judge issued expansive, detailed findings of fact. Although we do not defer to those findings, we do view some of them as a helpful starting point for our review.[3] The special judge recounted the parties' disagreements regarding aspects of L.B.'s testimony and found that, while granting one of defense counsel's motions, the trial court responded, "Oh, good Lord." App. p. 180. The special judge quotes several excerpts from the conversation held outside the presence of the jury that immediately preceded the "Burger King" comment. The special judge found that defense counsel and the trial court engaged in an exchange after defense counsel asked, "Are you advocating for the State?" and that the trial court stated it was offended. *Id.* at 182. Shortly after that, the following exchange took place:

---

[3] The trial court denied Etter's first request for a mistrial. Had it been attempting to goad Etter into making that first request, it stands to reason that it would have granted his motion. Because it did not, we conclude the trial court was not trying to goad Etter into requesting a mistrial at that time, and we confine our review to the conversations and comments that took place after the trial court denied Etter's first motion for a mistrial.

[Defense Counsel]: That's what the testimony was. We can go back and listen to it, Judge.

[The Court]: Well, go right ahead, [defense counsel].

[Defense Counsel]: I mean -- no, I'm just saying --

[The Court]: Do whatever you want to do. This is your trial.

[The Court]: Go ahead.

[Defense Counsel]: I'm just (inaudible) go ahead and finish (inaudible). That's fine.

[The Court]: Go right ahead.

[Defense Counsel]: Okay.

[The Court]: Just have it your way.

[Defense Counsel]: Okay.

Tr. p. 92. The bench conference concluded, and the trial court then said, "It's Burger King today." *Id.*

[14] The special judge found that Etter and the State disagreed regarding how loudly the trial court made the "Burger King" comment and that "[t]he State argues that it was not loud enough for the courtroom to hear . . . . However the comment was made loud enough for two deputy public defenders sitting in the

back of the courtroom, to have heard it." App. p. 183. The special judge further found:

> 55) After the jury was released [the trial court] address[ed] [defense counsel]:
>
> We're done. Thank you. I'm going to reset this for trial [a]nd I'm going to put it on my commissioner's calendar and you can have the rest of your cases in my court in front of the commissioner, [defense counsel]. Your attitude towards this Court has always been disrespectful and it was no less today. It's nothing less than I expected, actually. I don't know why I would have expected anything different. We can try this Thursday. I'll put it on her calendar and we can do the trial then.

*Id.* at 183.

[15] The special judge found "Clearly [the trial court] became frustrated over the events that transpired during the trial" and cited the admonishment the trial court gave defense counsel after the jury was excused. *Id.* at 185. In particular, the special judge noted, "At one point [the trial court] stated, 'Your attitude toward this Court has always been disrespectful and it was no less today.'" *Id.* The special judge concluded that statement was "not without merit" and that defense counsel's question regarding the trial court's impartiality "could be perceived as being disrespectful in nature." *Id.* at 186. The special judge acknowledged "a buildup on [sic] tension between [the trial court] and [defense counsel] . . . [which] reached a breaking point when [the trial court] stated 'It's Burger King today.'" *Id.* (no citation in original).

[16] Based on our de novo review of the record, we conclude that the above-referenced findings are accurate. In addition to the special judge's findings, our review of the record reveals that the trial court made several frustrated, intemperate remarks directed at defense counsel during the bench conference immediately preceding the "Burger King" comment; the exchanges between the trial court and defense counsel were tense. Our review of the audio recording reveals that the volume of the trial court's voice increased during the bench conference when she denied advocating for the State and expressed her frustration with defense counsel's suggestion otherwise. But the record contains no evidence the jury heard any of the comments immediately preceding the "Burger King" comment. That is true even though two attorneys present in the courtroom heard snippets of the bench conference and described the trial court's expression and tone as "angry or upset" and "very impatient." App. p. 159.

[17] We next turn to the "Burger King" comment, the comment that seems to have precipitated Etter's request for a mistrial. Based on our review of the audio recording of the trial, we observe that the volume of that comment was not as loud as statements the trial court made to the courtroom in general, but not as quiet, generally, as those it made during bench conferences. We further observe that the record contains no evidence the jurors heard the comment, despite the fact that two attorneys present in the courtroom did. We do not believe it is reasonable to infer that the jurors were paying attention to the non-testimony statement to the same degree the attorneys were, particularly one made immediately following a bench conference, which is designed to be a private

conversation between the trial court and the parties. Therefore, we do not believe it is reasonable to infer that the jurors heard the comment simply because the attorneys who were observing the trial did.

[18] The meaning of the "Burger King" comment is not self-evident. It was flippant and may have trivialized the importance of a Class B felony jury trial. But it is not clear from our review of the transcript or audio recording precisely what the trial court intended to convey when she made the comment. Etter explains in his motion to dismiss that the "Burger King" comment is "not unlike the comments cited by the Judicial Qualification Commission as in the case against [another trial judge]: 'This isn't McDonald[']s, you can't get what you want when you want it.'" App. p. 155 (no citation in original). We are unfamiliar with that context and presume the jury was as well. Without that context, we do not assign the same offensive meaning to it that defense counsel understandably did. More to the point, however, there is nothing in the record that establishes, or from which we can infer, that the trial court had that context in mind when she made the comment or otherwise intended it to prompt defense counsel to seek a mistrial.

[19] Our review of the record, including the audio recording of the trial, reveals that, although the trial court was frustrated with defense counsel and made inappropriate comments, there is no evidence she intended to goad Etter into requesting a mistrial. Although we do not condone the trial court's comments, we cannot say they were so damaging to Etter as to necessitate a mistrial.

# Conclusion

[20] The special judge properly denied Etter's motion to dismiss. We affirm.

[21] Affirmed.


Vaidik, C.J., and Mathias, J., concur.