## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2016, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Ruben Green<br>Carlisle, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Richard C. Webster<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ruben B. Green,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | December 9, 2016<br><br>Court of Appeals Case No.<br>49A04-1510-PC-1685<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Grant W. Hawkins, Judge<br><br>The Honorable Allan W. Reid, Magistrate<br><br>Trial Court Cause No.<br>49G05-0409-PC-165296 |

**Baker, Judge.**

[1] Ruben Green appeals the denial of his petition for post-conviction relief from his Murder conviction, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial and appellate counsel. Finding no error, we affirm.

# Facts

[2] The underlying facts of this case are as follows:

> Ruben Green and Sharon Glass were involved in a romantic relationship from November 2003 to September 2004. On September 3, after the relationship had ended, Glass reported a computer and two DVD/VCR players had been taken from her home. The burglary upset Glass, so she and her new boyfriend, Robert Dunn, spent the night at a hotel. When she returned home the next day, she found her television had been stolen. That day, she reported Green had beaten her and told police she suspected he was involved in at least one of the burglaries. Dunn testified Green spied on Glass, called her frequently, and left a message stating she "was going to regret leaving me, bitch." (Tr. at 625.)
>
> Robert Locke, a friend of Glass, was dating a woman who lived in the same apartment complex as Green. Locke was at the complex frequently. Green told Locke he had stolen some of Glass' property, and Locke saw him pawn some of the items. Locke told Glass that Green had her property, but did not tell her Green had pawned the items.
>
> On September 13, Glass told Dunn that Green had called her, saying he was willing to return her property. Glass went to Green's apartment complex, where she saw Locke sitting outside. Glass told him that she had come to get her things from Green.

She told him if she was not out in fifteen minutes, he should call the police.

Locke did not take her comment seriously and returned to his girlfriend's apartment. About fifteen minutes later, Green appeared at the door of Locke's girlfriend's apartment and told Locke that Glass had hit him in the head with a bottle. Locke and Green ran back to Green's apartment, where Locke saw Glass sitting in a chair. She was bloody and wearing only panties and a shirt. Her mouth was open and her eyes were rolled back in her head. Locke ran back to his girlfriend's apartment to call 911. Green also called 911 and began CPR on Glass as instructed.

Paramedics arrived to take Glass to the hospital, and she died en route. Green was taken into custody. After being advised of his *Miranda* rights, Green claimed Glass had hit him in the head with his clock and bit him, the attack was unprovoked, and he had hurt her in the course of warding off her attack.

*Green v. State*, 875 N.E.2d 473, 475-76 (Ind. Ct. App. 2007). Glass's autopsy revealed that she had sustained several blunt force injuries to her face and head, causing damage and significant bleeding and injury to her brain. She also suffered a fractured skull, which severed both of her carotid arteries, and had injuries to her neck consistent with strangulation. She suffered facial injuries, some of which left a pattern on her skin consistent with the soles of the boots Green was wearing when the police took him into custody. Glass also had defensive wounds to the backs of her hands.

The State charged Green with murder, and his jury trial took place between August 7 and August 9, 2006.[1] Green raised a claim of self-defense. At the close of the evidence, the trial court gave final instruction 21-K on self-defense and final instruction 21-J, which was a limiting instruction on the use of evidence involving Green's prior bad acts. The jury found Green guilty as charged, and the trial court later sentenced him to sixty years imprisonment.

Green brought a direct appeal of the conviction, raising issues related to double jeopardy, jury instructions regarding murder and voluntary manslaughter, and sufficiency of the evidence. This Court affirmed. *Id.* at 479. On January 15, 2014, Green filed a petition for post-conviction relief, alleging ineffective assistance of both trial and appellate counsel. Following an evidentiary hearing, the post-conviction court denied the petition. Green now appeals.

# Discussion and Decision

## I. Standard of Review

The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative

---

[1] Green's first jury trial ended in a mistrial for reasons that are not relevant to this appeal.

judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

## II. Assistance of Trial Counsel

[6] Green argues that his trial counsel was ineffective for failing to object to final jury instruction 21-K and for failing to tender his own jury instruction regarding self-defense. A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two

prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012). However, "[i]f we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011). "Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[7] Instruction 21-K reads as follows:

> An issue has been raised as to whether or not the Defendant was acting in self-defense.
>
> The defense of self-defense allows that a person is justified in using reasonable force against another person to protect himself, or a third party, from what he believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that such force is necessary to prevent serious bodily injury to himself or a third person, or to prevent the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or another by reasonably necessary means. It is the State's burden to disprove a claim of self-defense by proof beyond a reasonable doubt. The State may satisfy this burden by proving beyond a reasonable doubt:
>
> - That the Defendant was committing a crime,
> - That the Defendant was in a place where he had no right to be,
> - That the Defendant acted improperly in that he was the initial aggressor or participated willingly in the violence[,]

- That the Defendant used a degree of force that was excessive or unreasonable under the circumstance, or
- If the Defendant used deadly force, he did not have a reasonable fear or apprehension of death or great bodily harm.

If the State proves any one of these facts beyond a reasonable doubt, then you may disregard the claim of self-defense. The State is not required to present rebuttal evidence to disprove a claim of self-defense, it may rely upon any evidence introduced during the course of the trial.

The question of the existence of an apparent danger and the amount of force necessary to resist force can only be determined from the standpoint of the Defendant at the time of his actions and under the then existing circumstances. The Defendant may use such force as may reasonably be necessary to resist such attack or apparent attack. He will not be accountable for an error in judgment as to the amount of force necessary, provided he acted reasonably and honestly. One who was in no apparent danger and had no reasonable ground for apprehension of danger cannot raise this defense.

Appellant's App. p. 203-04. Green argues that this instruction is improper because it does not instruct the jury of the requirement that, in order to preclude a defendant from asserting self-defense if he is committing a crime, there must be an immediate causal connection between the crime and the confrontation. The State acknowledges that the evidence must show that, but for the defendant committing a crime, the alleged act of self-defense resulting in injury to the victim would not have occurred, *Mayes v. State*, 744 N.E.2d 390, 394 (Ind. 2001), and that Instruction 21-K does not include that language.

[8] It is well established that errors in the giving of jury instructions are harmless if the "conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *E.g.*, *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001). In this case, there is overwhelming evidence supporting the verdict and there is no likelihood that adding the causal language to the instruction would have changed the result.[2]

[9] Specifically, there are three other relevant ways the State may negate a defendant's claim of self-defense: by showing that (1) he was the initial aggressor or participated willingly in the violence; (2) he used a degree of force that was excessive or unreasonable under the circumstances; or (3) he did not have a reasonable fear or apprehension of death or great bodily harm. I.C. § 35-41-3-2 (2004). Given the wealth of evidence in the record regarding Glass's catastrophic injuries, including a fractured skull severing both carotid arteries, neck injuries consistent with strangulation, and facial injuries leaving a pattern on her skin that matched the soles of Green's boots, there is little to no likelihood that the addition of the causal language to Instruction 21-K would have changed the outcome. Indeed, it is entirely likely that the jury focused far more on the fact that Green used an excessive or unreasonable degree of force

_____

[2] Instruction 21-J stated that evidence regarding Green's prior bad acts is solely relevant to the issue of Green's intent, motive, knowledge, and the nature of the relationship between Green and Glass. Green seems to argue that this instruction would have permitted the jury to determine that he had committed a crime and, pursuant to Instruction 21-K, the claim of self-defense would be disproved. Green misunderstands Instruction 21-J, which is unrelated to whether the State met its burden of disproving self-defense. Instruction 21-J, which acted as a *limit* on the jury's ability to consider evidence, had no effect on the claim of self-defense and we decline to reverse on this basis.

than on the fact that he may have earlier committed a crime by stealing Glass's personal belongings. As a result, we find that Green has failed to establish that his attorney's failure to object to Instruction 21-K prejudiced him such that the result of the proceeding would have been different had an objection been made. In other words, the post-conviction court did not err by denying his petition for post-conviction relief on this basis.

## III. Appellate Counsel

[10] Green argues that appellate counsel was ineffective for failing to raise the issue of Final Instruction 21-K in his direct appeal. The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. *E.g.*, *Hollowell v. State*, 19 N.E.3d at 269. Ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal. *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). The decision as to what issues to raise on appeal is one of the most important strategic decisions made by appellate counsel, and we give considerable deference to those decisions. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997). To succeed on this claim, the petitioner must show that the unraised issue was significant, obvious, and clearly stronger than the issues that were raised. *Id.* at 194.

[11] Green contends that appellate counsel should have argued on appeal that Instruction 21-K was erroneous. Because no objection was made to this

instruction at trial, to succeed on appeal, counsel would have had to establish fundamental error. *Hopkins v. State*, 782 N.E.2d 988, 991 (Ind. 2003). A claim of fundamental error is not viable absent a showing of grave peril and the possible effect on the jury's decision. *Id.*

[12] As noted above, however, Green was not prejudiced as a result of Instruction 21-K. Had the causal language been included, there is little to no likelihood that the outcome would have been different. Consequently, even if appellate counsel had raised the issue on direct appeal, Green would not have prevailed. We find, therefore, that the post-conviction court did not err by concluding that Green failed to establish that he received the ineffective assistance of appellate counsel.

[13] The judgment of the post-conviction court is affirmed.

May, J., and Brown, J., concur.