## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2019, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Andrew Kobe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dontez West and Kyree Guajardo, *Appellants-Defendants,* v. State of Indiana, *Appellee-Plaintiff.* | November 27, 2019 |
| | Court of Appeals Case No. 19A-CR-414 |
| | Interlocutory Appeal from the Madison Circuit Court |
| | The Honorable David A. Happe, Judge |
| | Trial Court Cause Nos. 48C04-1804-F2-1127 48C04-1805-F2-1267 48C04-1709-F4-2230 48C04-1805-F2-1268 |

**Mathias, Judge.**

[1] Dontez West ("West") and Kyree Guajardo ("Guajardo") (collectively "the Defendants") bring this interlocutory appeal from the Madison Circuit Court's denial of their motions to dismiss the criminal charges against them after their first trial ended in a mistrial. On appeal, the Defendants claim that a retrial would constitute double jeopardy and that the trial court therefore erred in denying their motions to dismiss. Concluding that a retrial does not subject the Defendants to double jeopardy, we affirm.

## Facts and Procedural History

[2] On August 29, 2017, a "known source," later revealed to be Eric Troutman ("Troutman"), informed officers of the Anderson Police Department ("APD") that he had seen Tiras Johnson ("Johnson") in possession of a "half brick" of cocaine, multiple firearms, and a safe believed to contain a large amount of cash at Johnson's home on Beverly Court in Anderson, Indiana. Appellants' Confidential App. Vol. 3, p. 148. A subsequent search of Johnson's home revealed multiple handguns, a large amount of cash, a safe containing a white, powdery residue that appeared to be cocaine, marijuana, approximately thirteen ounces of methamphetamine and approximately twenty-four ounces of cocaine.

[3] Subsequent investigation led to the State charging Johnson, Troutman, and the defendants West and Guajardo with various drug-related offenses. With regard to West, the State ultimately charged him with two counts of Level 3 felony dealing in cocaine, two counts of Level 6 felony dealing in marijuana, and one count each of Level 2 felony conspiracy to commit dealing in cocaine, Level 3

felony possession of cocaine, Level 5 felony corrupt business influence, and Level 6 felony money laundering. The State charged Guajardo with Level 2 felony conspiracy to commit dealing in cocaine, Level 5 felony corrupt business influence, and Level 6 felony money laundering.

[4] On October 23, 2018, Troutman entered into a plea agreement with the State that provided in part that he would, as a condition of his sentence, "testify fully and truthfully in all pretrial hearings, depositions and at trial, if called as a witness" in the State's cases against West, Guajardo, and Johnson. Appellants' App. Vol. III, p. 146.

[5] On November 16, 2018, counsel for West and Guajardo deposed Troutman. During his deposition, Troutman stated that he knew that he could obtain cocaine from West and that he sold cocaine he had bought from West for a profit in order to fund his drug habit. With regard to Johnson, West's counsel questioned Troutman as follows:

> Q. Okay. And then with Tiras [Johnson], what's your involvement with Tiras as far as this case goes?
>
> A. I mean I've known him for a long time. I really . . . I've never bought anything off of him.
>
> Q. Okay. Earlier today I took Detective Gaskill's deposition, and we'll talk more about this in a minute, but before you plead[ed] guilty, or after you plead[ed] guilty, sometime around then, you sat down with Mr. Miller, your attorney, and Keith Gaskill, is that correct?
>
> A. Yes.

Q. And gave a statement?

A. Yes.

Q. Detective Gaskill said that you said during that that you had bought pills [from] Tiras.

A. Yes.

Q. When did that happen?

A. Probably like a year and a half ago.

Q. Okay. And beyond buying pills that one time, more than one time?

A. You said that buying —

Q. Was that . . . Was it pills that you bought from Tiras?

**A. Yes. I never bought cocaine or anything off of him.**

Q. Did you buy pills from Tiras more than one time?

A. No, just that one time.

Q. **Okay. So as far as cocaine, as it pertains to cocaine, did you and Tiras have any interaction at all?**

A. **No.**

Appellants' App. Vol. 4, pp. 66–67 (emphases added).

[6] During the discovery process, the State never revealed to the defense that Troutman was the "known source" who informed police that Johnson was in possession of cocaine.

[7] At the joint trial of Guajardo and West, Troutman testified as a witness for the State after being granted use immunity. Troutman was a hesitant witness but testified that he bought cocaine from West in order to resell it to others.

[8] Also at trial, APD Sergeant Chad Boynton ("Sgt. Boynton") testified for the State. When asked to describe the circumstances that led to the search of Johnson's home, Sgt. Boynton responded:

> I had received a call from Officer Marty Dulworth, K-9 Officer and Community Police Officer with our department, um, with the Anderson Police Department I should say. **He had received information from Eric Troutman regarding what had been described as a half brick, a term that I know to refer to as a half kilo, of cocaine at [Johnson's] residence, as well as firearms and a large amount of cash currency**. . . . Upon receiving that information I made an attempt to verify some of the information that was put forth, um, which included that Tiras Johnson was on in-home detention or community correction sanctions at that - at that address.

Tr. Vol. 6, p. 22 (emphasis added). After Sgt. Boynton's testimony, the trial court recessed for the day.

[9] Before the trial resumed the following morning, West's counsel requested a mistrial, arguing that, prior to Sgt. Boynton's testimony, he and Guajardo's counsel had been unaware that Troutman was the source who informed the police of cocaine at Johnson's home. The defense claimed that the State had not disclosed this information during discovery. West's counsel argued that, had he known that Troutman was the known source, he would not have

attempted to attack Troutman's credibility, as his theory of the defense was that West dealt in marijuana, not cocaine, and that Johnson was the cocaine dealer. The prosecuting attorney did not deny that Troutman's identity as the source had not been revealed but claimed that he mistakenly believed he had disclosed this information to the defense.

[10] The trial court then asked counsel for all parties what the remedy should be for the State's failure to disclose Troutman's identity as the known source. The defense argued for a mistrial. The prosecuting attorney argued against a mistrial, suggesting that a continuance and further deposition of Troutman would be an adequate remedy. The trial court took the matter under advisement and, after a recess, granted the defense's request for a mistrial, stating:

> Mistrials are extreme remedies, they're not to be used lightly, and there is a significant waste of resources when a mistrial is declared. And there are harms to the defense that occur, as well, when a mistrial is declared. The defendants will remain in custody until a retrial can be scheduled when a mistrial [i]s granted. In this case, however, the court is persuaded, especially with respect to defendant West, that the non-disclosed information would have had a significant impact on defense strategy that could have had a possible persuasive [e]ffect on the jurors in the case. So with great reluctance the court does find at this point that mistrial is the only remedy which is adequate to address the problem. So I am granting a mistrial in both [Defendants'] cases, they'll be rescheduled for trial.

Tr. Vol. 6, p. 85.

[11]     On January 3 and 7, 2019, West and Guajardo, respectively, filed motions to dismiss, arguing that their retrial was barred by double jeopardy. The trial court held a hearing on the motions on January 11, 2019, at which it heard arguments from both parties. At the conclusion of the hearing, the trial court denied the motions to dismiss, ruling in relevant part:

> To restate the obvious, there was significant error that was made in the discovery process. I think that it's a simple call to characterize that as at least negligent in that there was a duty to provide the information. That duty was breached and it resulted in har[m] to the defense. So the elements of, um, negligence there are simple. **The issue that the Court's asked to decide today however is a higher threshold which is that of intent.** Because we're not here talking about a discovery violation or remedies for a discovery violation, but looking at the possible extreme remedy of raising a double jeopardy bar because the State has intentionally incited a mistrial. That's the element of the claim. Much of the defense argument was spent kind of going back over the circumstances and facts of the discovery violation. And, um, the Court notes that no matter how egregious the violation that doesn't get it to a level of double jeopardy bar being raised. It must be more than even the intentional wrongful withholding of evidence. **It has to be the intentional incitement of a mistrial.** If I look at the facts and interpret them most favorably to the defense and assume for the sake of argument here today that the State intentionally withheld Brady material for tactical advantage, um, what does that mean here? Well, it doesn't answer the question if I assume that. **I still have to determine whether or not the State intended to incite a mistrial. Not whether they did something wrong, not whether they intended to hide evidence for tactical advantage, but whether they tried to cause a mistrial.** I'm not aware of any Indiana case on this

*Oregon versus Kennedy*[1] issue that, uh, doesn't require that the State have an intent to create a mistrial. You have to look at what the overall progress of the case had been up to that point. How was the State doing at that point. Would there have been a substantial benefit to the State in scrapping that trial and starting fresh with a new record. **And the Court has to find at this point that I don't find there would've been a material benefit to the State.** The State would've been left with more inconsistent statements from witnesses who at points struggled for consistency as it was. There were witnesses who were reluctant to testify and it's doubtful that they would've gotten more willing to testify at a retrial. And, um, of pretty strong significance is the fact that the door had been opened to Mr. Guajardo's cocaine history, and it's unlikely that that would happen again at a retrial. **And that's a fact which certainly weighed heavily in the State's favor**. The fact that the State caused the mistrial isn't enough to raise double jeopardy. . . . And I don't find here that the remedy of double jeopardy bar being raised and the cases being dismissed is appropriate. I recognize that there is not Indiana authority quite on point with this fact pattern but, to the extent that I can extract a rule from the existing Indiana cases, the Court would find the standard has not been met here. **No matter how egregious the violation, I don't find that there was a demonstrated intent on the part of the State to cause a mistrial.** At best, their (indiscernible) there was an intent to hide evidence for a tactical advantage that should've been disclosed, and this isn't the remedy for that. **So, the Court is going to deny the defendants' motions to dismiss.**

Tr. Vol. 6, pp. 123–25 (emphases added).

---

[1] This is a reference to *Oregon v. Kennedy*, 456 U.S. 667 (1982), discussed *infra*.

On January 18, 2019, the Defendants requested that the trial court certify its order denying their motion to dismiss for interlocutory appeal. The court granted this request five days later. On March 22, 2019, this court accepted jurisdiction over West's appeal. We did the same for Guajardo's appeal one week later. We subsequently consolidated both cases, and this appeal ensued.

## Discussion and Decision

The sole issue on appeal is whether the trial court erred in denying the Defendants' motions to dismiss the criminal charges against them. The Defendants argue that the prohibitions against double jeopardy in the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution bar their retrial. As we explained in a case addressing a similar question:

> The Fifth Amendment to the United States Constitution "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982). The Double Jeopardy Clause further grants a defendant the right "to have his trial completed by a particular tribunal." *Id*. at 671–72, 102 S. Ct. at 2087. In general, when a defendant elects to terminate the proceedings against him or her, double jeopardy does not bar retrial. *See id*. at 672–73, 102 S.Ct. at 2088. **However, there is a narrow exception to this rule: "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."** *Id*. at 674, 102 S. Ct. at 2088 (citation omitted). "[I]f a defendant moves for or consents to a mistrial, the defendant forfeits the right to raise a double jeopardy claim in subsequent proceedings **unless the motion for**

> **mistrial was necessitated by governmental conduct 'intended
> to goad the defendant into moving for a mistrial.'"** *Willoughby*
> [*v. State*], 660 N.E.2d [570, 576 (Ind. 1996)] (quoting *Kennedy*,
> 456 U.S. at 676, 102 S. Ct. at 2089).

*Etter v. State*, 56 N.E.3d 53, 55–56 (Ind. Ct. App. 2016) (emphases added), *trans. denied*.

[14] This constitutional test has been codified at Indiana Code section 35-41-4-3, which provides:

> (a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:
>
> * * *
>
> (2) the former prosecution was terminated after the jury was impaneled and sworn or, in a trial by the court without a jury, after the first witness was sworn, unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination, (ii) it was physically impossible to proceed with the trial in conformity with law, (iii) there was a legal defect in the proceedings that would make any judgment entered upon a verdict reversible as a matter of law, (iv) prejudicial conduct, in or outside the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state, (v) the jury was unable to agree on a verdict, or (vi) false statements of a juror on voir dire prevented a fair trial.
>
> (b) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, **with intent to cause termination of the trial**, another prosecution is barred.

(Emphasis added).

[15] When evaluating whether the prosecutor intended to cause the termination of the trial, our supreme court has held that "[t]he subjective intent of the prosecutor is the dispositive issue." *Butler v. State*, 724 N.E.2d 600, 603 (Ind. 2000) (citing *Wilson v. State*, 697 N.E.2d 466, 472 (Ind. 1998)). Although a trial court's determination of prosecutorial intent is not conclusive for purposes of our review, we do regard its determination as "very persuasive." *Id*. at 603–04 (quoting *Wilson*, 697 N.E.2d at 473).[2] That is, the issue of the prosecutor's intent "is a factual determination that we review under a clearly erroneous standard." *Id*. at 604. Because the clearly erroneous standard is a review for the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *State v. Greene*, 16 N.E.3d 416, 418 (Ind. 2014). Instead, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id*.

[16] The trial court here specifically found that, by failing to disclose Troutman's role as a police source, the prosecuting attorney did not intend to cause a mistrial. Considering only the evidence supporting the trial court's factual determination, we must agree. The record reveals that, for whatever reason, the State did not disclose to the defense that Troutman was the known source of the information that led to the search of Johnson's home. When the defense

---

[2] The Supreme Court in *Kennedy* treated the state trial court's determination as dispositive. *Kennedy*, 456 U.S. at 679). However, our supreme court in *Wilson* held that although the trial court's determination of intent was not conclusive, it was "very persuasive." 697 N.E.2d at 473; *accord Butler*, 724 N.E.2d at 604.

deposed Troutman, he claimed to have bought cocaine from West and to have purchased pills from Johnson. He denied, however, having purchased cocaine from Johnson. When defense counsel asked Troutman, "as it pertains to cocaine, did you and [Johnson] have any interaction at all?" Johnson replied, "No." Appellants' App. Vol. 4, p. 67. The Defendants now claim that this answer was false, thereby constituting perjury, and that the prosecution committed misconduct by not correcting this response during the deposition or at any time prior to trial. We are unable to agree.

[17] Troutman was asked if he had any "interaction" with Johnson pertaining to cocaine. The fact that Troutman told the police that he saw a "brick" of cocaine at Johnson's house does not mean that he had an "interaction" with Johnson vis-à-vis the cocaine. Troutman could very well have bought pills from Johnson and have seen cocaine at Johnson's home without ever having purchased cocaine or otherwise "interacted" with Johnson regarding the cocaine. Thus, the Defendants' claims that the prosecutor violated various duties and ethical obligations to correct perjured testimony fall flat, as Troutman's deposition testimony was not necessarily false.

[18] Furthermore, the lead prosecuting attorney admitted to the trial court that the State had failed to disclose Troutman's role to the defense but stated that he believed he had done so and that his failure to do so was inadvertent. Pointing to the complexity of the case and the large amount of information disclosed during the discovery process, the prosecuting attorney claimed that this

oversight was unintentional. The trial court was well within its discretion to credit the prosecuting attorney's account.

[19] But more importantly, as noted by the trial court, there is no indication that the prosecution withheld this evidence, or belatedly disclosed it to the defense, with the subjective intent of causing a mistrial. To the contrary, the State argued strongly against the remedy of a mistrial. And, as noted by the trial court when denying the Defendants' motions to dismiss, the trial was not going poorly for the State, and Guajardo had even opened the door to damaging evidence of his prior history with cocaine. Thus, there was sufficient evidence supporting the trial court's determination that the prosecution did not intend to cause a mistrial.

[20] The Defendants correctly note that, in prior cases where our courts have affirmed a trial court's denial of a motion to dismiss following a mistrial, the cause of the mistrial was due to the behavior of a witness for the prosecution, not the behavior of the prosecuting attorneys themselves. *See, e.g.*, *Wilson*, 697 N.E.2d at 472–73 (affirming trial court's denial of defendant's motion to dismiss following a mistrial caused by State's witness referring to defendant's request for an attorney where the witness's problematic testimony was not directly responsive to the prosecutor's questions and where prosecutor's questions did not appear to be deliberately calculated to create the need for a mistrial); *Willoughby*, 660 N.E.2d at 575–76 (holding that trial court did not err in permitting retrial of defendant after mistrial caused by a police officer improperly referring to a polygraph examination where there was no evidence

that the prosecutor intended to cause the mistrial or that the officer knew his comments would likely cause a mistrial); *Harbert v. State*, 51 N.E.3d 267, 274–75 (Ind. Ct. App. 2016) (affirming trial court's denial of defendant's request to dismiss following a mistrial caused by the State's witness referring to prior arrest of co-defendant where there was no evidence that the prosecutor intended to cause a mistrial or that the witness knew the comments would cause a mistrial), *trans. denied*.

[21] The Defendants attempt to distinguish the present case based on who caused the need for the mistrial. They argue that the fault should be placed on the State because the need for the mistrial was caused by the prosecuting attorney's failure to disclose Troutman's identity as the known source that led to the search of Johnson's home, not simply a State's witness. But this is not the relevant test. That is, the question is not which party is at fault for causing the mistrial, the question is whether the State acted with the subjective intent to cause a mistrial. Here, there is no evidence to support such a finding, much less evidence that would suggest that the trial court's contrary finding was clearly erroneous.

[22] We were confronted with a similar situation in *Green v. State*, 875 N.E.2d 473 (Ind. Ct. App. 2007), *trans. denied*. In that case, a police detective discovered during the course of the defendant's trial that she had relevant telephone records in her possession. *Id*. at 476. These records, however, were not properly certified, nor were they provided to the defense during discovery. *Id*. When the prosecuting attorney was made aware of this situation, he gave a copy of the

phone records to the defense counsel and agreed that the records could not be admitted at trial. *Id.* The trial court, unaware of the nature of the phone records, permitted a juror to ask the detective a question regarding the phone records. *Id.* When the trial court was later made aware of the circumstances surrounding the phone records, it declared a mistrial. *Id.* Prior to the retrial, the defendant moved to dismiss, arguing that his retrial was barred by double jeopardy. *Id.* The trial court denied the motion, and the second trial resulted in the defendant's conviction. *Id.*

[23] On appeal, Green contended that the trial court erred by denying his motion to dismiss. We rejected this contention, noting that although the trial court found that the mistrial was "the responsibility of the State," this was not inconsistent with the finding that the prosecution did not intend to cause a mistrial. *Id.* at 477. We also noted that the prosecutor did not intentionally withhold the phone records. *Id.* Further, at the hearing on the motion to dismiss, the prosecuting attorney stated that the first trial had been going well for the State and that he did not want a mistrial. *Id.* Given these facts, we held that the trial court's decision to deny the motion to dismiss was not clearly erroneous. *Id.*

[24] Although the facts of the present case are not wholly analogous to those in *Green*, in both cases, the State's inadvertent mistake caused the mistrial. And in both cases, the trial court found that the prosecutors did not intend to cause a mistrial. Indeed, here, as in *Green*, the prosecutor believed the State's case to be going well and did not desire a mistrial. As in *Green*, we are in no position to

second-guess the trial court's decision on the question of the prosecutor's subjective intent.

[25] Both the Defendants and the State spend much of their briefs on the issue of whether, under the Indiana Constitution, we should adopt a stricter standard for when double jeopardy bars a retrial following a mistrial that was the result of the actions of the prosecution. Noting that our supreme court has adopted a stricter test for determining whether two or more convictions constitute double jeopardy under the Indiana Constitution, *see Richardson v. State,* 717 N.E.2d 32 (Ind. 1999), the Defendants argue that we should adopt a correspondingly stricter test for determining whether retrial is permissible following a mistrial caused by the State.

[26] In support of their argument, the Defendants note that several commenters have criticized the more lenient federal standard announced by the United States Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667 (1982). *See* Appellants' Br. at 23.[3] The Defendants also note that several other state courts have given defendants more protections following mistrials caused by the prosecution based upon the double jeopardy clauses found in their state constitutions.[4]

---

[3] In their Appellants' Brief, the Defendants quote a substantial portion of what they claim to be the opinion of this court in *Harbert*. As noted by the State, however, the language quoted by the Defendants is not from this court's opinion. Instead, it appears this quote was taken from a brief filed in the Washington Supreme Court in a case involving a similar issue. The Defendants do not deny this claim in their reply brief. We caution counsel for the Defendants to be more careful when attributing quotations to this court.

[4] *See Thomas v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 402 P.3d 619, 626 (Nev. 2017); *People v. Batts*, 68 P.3d 357, 380–81 (Cal. 2003); *State v. Rogan*, 984 P.2d 1231, 1249 (Haw. 1999); *State v. Breit*, 930 P.2d 792, 803 (N.M. 1996); *Commonwealth. v. Smith*, 615 A.2d 321, 325 (Pa. 1992); *State v. White*, 354 S.E.2d 324, 329 (N.C. Ct. App. 1987); *Pool v. Superior Court In & For Pima Cty.*, 677 P.2d 261, 271–72 (Ariz. 1984); *State v.*

This court has been asked to adopt a stricter test before, and we have declined to do so. *See Harbert*, 51 N.E.3d at 275 (declining to adopt the stricter standard adopted by the Oregon Supreme Court in *Kennedy*); *Etter*, 56 N.E.3d at 56 n.1 (declining to adopt a stricter standard based on the Indiana Constitution and noting that our courts have not undertaken a separate analysis under our state constitution when addressing the issue of double jeopardy following a retrial caused by the State's conduct); *Calvert v. State*, 14 N.E.3d 818, 823 (Ind. Ct. App. 2014) (declining to adopt Oregon's stricter test in determining whether prosecutorial misconduct barred retrial following reversal of defendant's conviction on appeal); *see also Willoughby*, 660 at 575–76; *Green*, 875 N.E.2d at 476–77 (both addressing defendant's claims that the double jeopardy clause of the Indiana Constitution barred retrial following a mistrial using the *Oregon v. Kennedy* standard). We once again decline to depart from our current test.[5]

## Conclusion

The trial court did not clearly err in determining that the prosecuting attorney did not subjectively intend to cause a mistrial or intend to goad the Defendants into requesting a mistrial. The Defendants' retrial therefore does not constitute

---

*Kennedy*, 666 P.2d 1316, 1326 (Ore. 1983) (all interpreting their respective state constitutional prohibitions against double jeopardy to provide more protection for defendants following a mistrial caused by the prosecution). The Texas Court of Criminal Appeals also adopted a stricter rule in *Bauder v. State*, 921 S.W.2d 696, 699 (Tex. Crim. App. 1996), but this decision was later overruled in *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007), in which the court abandoned the stricter rule and adopted the federal rule announced in *Oregon v. Kennedy*.

[5] If such an important change in Indiana constitutional law is to be made, we believe it should be made by the Indiana Supreme Court.

double jeopardy. Accordingly, we affirm the order of the trial court denying the Defendants' motions to dismiss.

[29] Affirmed.

Robb, J., and Pyle, J., concur.